JAMES H. KIRBY, Plaintiff-Appellant, v. GENERAL MOTORS CORPORATION, Defendant-Appellee.

(No. 11692;

Fourth District—March 1, 1973.

Herrick, Rudasill & Moss, of Clinton, (Ray Moss, of counsel,) for appellant.

Lord, Bissell & Brook, of Chicago, Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, and Ross L. Malone, of Detroit, Michigan, (Richard E. Mueller and Michael Davis, of counsel,) for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from a judgment of the trial court entered in favor of defendant, General Motors Corporation, on a motion for summary judgment by defendant in an action brought to recover damages for personal injuries to plaintiff, a truck driver, caused by alleged negligent design of the steering mechanism in a chevrolet truck manufactured and designed by defendant.

The complaint alleged that the steering mechanism of the truck failed due to faulty design by defendant of certain of its parts. Defendant's answer denied the charges and by amendment raised defenses of assumption of the risk and contributory negligence of plaintiff.

Subsequently, defendant filed a motion for summary judgment on grounds that plaintiff's conduct amounted to assumption of the risk or contributory negligence, as a matter of law. This motion, based on two grounds, alleged that the defective product was not that of the defendant, and that the plaintiff assumed the risk of the consequences of the alleged defect or was guilty of contributory negligence.

The motion had attached to it as supporting documents the discovery depositions taken of plaintiff, and of Diana Albert, Vice President for Administration and former office manager and personnel director of Pre-Fab Transit Company, employer of plaintiff and owner of the truck plaintiff was driving, certain written answers of plaintiff to written interrogatories, the evidence deposition of James Webb taken by defendant, and an affidavit of Gerald A. Confer, an engineer of defendant.

Plaintiff filed no counter-affidavits or other documents countering those attached to defendant's motion for summary judgment.

From the record it appears that plaintiff, a truck driver, employed by Pre-Fab Transit Company at the time of the occurrence of February 19, 1968, resulting in plaintiff's injuries, was driving a 1962 chevrolet diesel tractor of his employer on an assignment for his employer, from Lansing, Michigan, to Largo, Indiana on a four-lane highway known as U.S. highway 24. He was driving at 50 to 55 miles per hour in the right-hand lane of the two westbound lanes.

Plaintiff pulled into the other westbound lane to pass another vehicle. After completing the pass and upon cutting his wheels to the right to return to the right-hand lane, plaintiff discovered he had no steering. The steering wheel would spin, having no apparent connection to the wheels. He braked the trailer, but skidded 40 to 50 feet on the pavement and went into a ditch and struck a tree on the right side of the road and was seriously injured.

At the time of the accident, plaintiff was 31 years of age. He had been raised on a farm and done usual farm repair work; had been in the Army and had served overseas with a truck driver military occupational specialty. He had been employed as a truck driver by his employer for about two years.

The 1962 chevrolet diesel tractor involved had been designed and manufactured by defendant and was bought by Pre-Fab Transit Company in 1962. Plaintiff started driving this truck in the fall of 1966, at which time its speedometer had about 300,000 miles on it. Plaintiff was its only regular driver from the fall of 1966 up to the time of the accident. Its speedometer showed an additional 150,000 miles or 450,000 miles.

It is plaintiff's contention that the accident was caused by failure of the tractor's steering system in that the yoke fitting the spline shaft coming out of the gear box pulled off, due to faulty design by defendant.

On at least two prior occasions, plaintiff had experienced loss of steering control of this tractor due to the yoke's pulling completely off of the spline shaft. Each prior time, plaintiff himself performed repairs and continued driving on the highway. Two months prior to the accident, while coming into a curve at about 50 miles per hour, upon attempting to turn left the truck would not guide. Plaintiff determined that the yoke had slipped off the spline shaft, whereupon he put the parts back together, tightened the safety bolt, and resumed driving. He later stopped, found the yoke had slipped up about a half-inch and again tightened the bolt.

During the next two months of January and February, 1968, he experienced difficulty in steering when, upon striking bumps, the steering

wheel would slip a half-turn. As a result, he left the truck in his employer's terminal for repairs during January, 1968, up to the date of the accident. On the date of the accident, a very few minutes before its occurrence, plaintiff again experienced a complete loss of steering. While driving along U.S. highway 24, he saw another of his employer's trucks at a truck stop. He pulled off of the road, but in the process of doing so, while his vehicle was traveling at 30 to 40 miles per hour, the steering wheel locked and would not turn. Since his truck was headed toward the side of the road, however, he simply let it slow down and braked it off to the side. The vehicle came to a stop approximately fifty yards from the truck stop entrance. He lifted the hood, saw that the "knuckle" again had slipped off the spline shaft, and had dropped down between the frame and gear box. He called over to the other driver and showed him the condition. Thereupon plaintiff lifted the "knuckle", placed it back on the shaft and tightened the bolt. He then closed the hood, got back into his truck and resumed traveling westward on U.S. highway 24. Three miles later the accident occurred.

Prior to the date of the accident, various fellow employees of plaintiff had been informed of, or knew of the existence of some defect or fault in the tractor steering mechanism. The shop foreman at the Farmer City, Illinois, and Columbus, Ohio, facilities had been informed of it. The vehicle had been left at the Columbus facility, where a knuckle was replaced; and something was replaced at the Farmer City facility.

One of the employer's other employees, a mechanic named James Webb who worked at Columbus, Ohio, on April 14, 1967, had inspected plaintiff's truck at the plant there and noted a defect in the steering mechanism. He replaced a universal joint in the steering shaft because it was worn. Such replacement, no doubt, required loosening the bolt in the assembly, lifting the yoke, or "knuckle" off the spline shaft, removing the shaft, universal joint and yoke from the vehicle. He did not recall whether he also replaced the yoke, or "knuckle", in the assembly; neither did he recall whether he replaced the bolt within the yoke or knuckle.

After the accident, some parts of the vehicle were removed. The intermediate shaft of the steering mechanism, together with its attached bolt, washer and nut, was taken by the employer. Neither the bolt, the washer, nor the nut removed from the vehicle were supplied by defendant either as original or replacement parts. The bolt removed from the vehicle was different in dimension, and the washer and nut were different in type from those supplied by the defendant to the vehicle either as original or replacement parts.

There can be no question but that this was a proper case for the granting of summary judgment. There was no genuine issue of material fact,

since as a matter of law plaintiff's conduct clearly constituted contributory negligence, if we are to treat this case as one merely of negligence. Further, were this case to be treated as one being brought on the theory of strict liability, plaintiff clearly assumed the risk as a matter of law. At the time defendant moved for summary judgment, the complaint alleged only negligence. Defendant's amendment to its answer pleaded the affirmative defense of contributory negligence and in addition pleaded the further affirmative defense to a case of strict liability in tort of the assumption of risk and misuse of the product. Defendant supported its motion for summary judgment with the matters listed above. Plaintiff offered no counter-affidavits or other proofs in opposition to the motion or to the facts shown by defendant's counter-affidavits and supporting documents.

■■ Where, as in this case, there is no genuine issue of material fact, and the court finds as a matter of law that there is a complete defense to the cause of action, it is not only proper, but it is the duty of the trial court to enter summary judgment for the defendant. *Allen v. Meyer* (1958), 14 Ill.2d 284, 152 N.E.2d 576; *Fooden v. Board of Governors, etc.* (1971), 48 Ill.2d 580, 272 N.E.2d 497; *Ferguson v. Lounsberry* (4th Dist. 1965), 58 Ill.App.2d 456; 207 N.E.2d 309; *Mitchell v. Ralston* (4th Dist. 1971), 130 Ill.App.2d 759; 266 N.E.2d 424.

■■ A manufacturer cannot be held liable either on the theory of negligence or on the theory of strict liability under circumstances as are shown by this record. The alleged defect was in a vehicle manufactured and placed in the channels of commerce some six years earlier. The vehicle had been driven some 450,000 miles. It had been repaired by the plaintiff and by employees of its owner. Replacement parts had been used which were neither designed, manufactured, nor sold by defendant whose liability is sought to be established. We know of no theory of liability under which the plaintiff's asserted claim can be established. The trial court quite correctly granted the motion for summary judgment for the defendant and that action is affirmed.

Judgment affirmed.

SMITH and SIMKINS, JJ., concur.