No. 12090

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

RICHARD WALTEE, Administrator of
the Estate of KENNETH WALTEE,

Plaintiff and Respondent,

-vs-

PETROLANE, INC., et al,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

For Appellant:

Small, Cummins and Hatch, Helena, Montana.
Floyd Small argued, Helena, Montana.

For Respondent:

Harris, Jackson and Utick, Helena, Montana.
LaVerne Harris and Andrew Utick argued, Helena,
Montana.
Knight, Dahood and Mackay, Anaconda, Montana.
Wade J. Dahood argued, Anaconda, Montana.

Submitted: April 27, 1973

Decided: JUL 5 1973

Filed: JUL 5 1973

Thomas J. Kearney
Clerk

Honorable Alfred B. Coate, District Judge, sitting in place of Mr. Justice John C. Harrison, delivered the Opinion of the Court.

Kenneth Waltee, his wife Sandra, and their three minor children all died as a result of monoxide poisoning produced by the propane furnace used to heat their rented mobile home. At the time of their death, January 22, 1969, Kenneth was 28 years of age and his wife Sandra was 23 years of age.

Kenneth Waltee left as his only surviving heirs his father and mother, Charles and Aune Waltee. This action was filed in the district court of the first judicial district, County of Lewis and Clark, on behalf of such parents under the provisions of the wrongful death statute, section 93-2810, R.C.M. 1947. Sandra Waltee left as her only surviving heirs her parents, Horace and Helen Peterson. A separate action for her death was filed on behalf of her parents under the provisions of the same statute. Defendant Petrolane, Inc. supplied the Waltee family with propane gas and repair services for their propane burning household applicances. The two actions were consolidated for trial and were tried to the court sitting with a jury. The verdicts awarded $82,864 for the death of Kenneth Waltee and $101,103 for the death of Sandra Waltee. After entry of judgment, defendant moved for a new trial and was denied. This appeal is from the judgment and order denying the motion for a new trial.

On January 19, 1969, the weather had turned severe and Kenneth called his landlord, an auto mechanic, to assist him in starting his car. The landlord assisted in the starting of the Waltee car and then spent some fifteen to twenty minutes in the Waltee home. The Waltees did not complain about the furnace nor did the landlord notice any fumes or odors coming from the furnace during the visit.

The following day, January 20, 1969, Albert Clark, an

employee of defendant, made a propane fuel delivery to the Waltee home. When Clark completed his delivery, he went to the door of the home to have Mrs. Waltee sign a receipt for the fuel. There was no odor of gas coming from the home and Mrs. Waltee made no complaint about the operation of the furnace or that any of her family was sick. Clark observed the Waltee children and they appeared to be healthy at that time.

The next day, January 21, 1969, the Waltees were snow-bound. At about 10:00 a.m., Kenneth walked through deep snow to his closest neighbor's home to use the telephone. Kenneth told his neighbor his family was sick from the odor of gas and that he would like to call a serviceman for help. He called defendant for assistance but defendant was unable to send a serviceman on that day.

The following day, January 22, 1969, Kenneth Waltee again walked to his neighbor's house to use the phone to call defendant. Kenneth reported that his family was still sick and the odor of gas was still present. The neighbor observed one of defendant's trucks arrive at the Waltee home that afternoon. The serviceman, Victor Zentner, noticed a light burned gas odor in the Waltee home when he first arrived. He went outside the home to check the exhaust vent for the furnace and found it partially blocked with accumulated ice. He tapped the ice off the vent, told the Waltees to air the house out, and that the furnace would now function properly.

On the morning of January 23, 1969, at about 10:00 a.m. the entire Kenneth Waltee family was found dead in their home by the sheriff-coroner, who concluded that they must have died some time before midnight the night before. It was subsequently deter-mined that the cause of death was carbon monoxide poisioning. The sheriff-coroner was the first person to enter the Waltee home

and he testified that all of the windows were closed. He said the place was "as tight as a drum", and the snow outside of the home was several feet deep so that it covered at least one of the vents under the home that normally was used to supply fresh air for the combustion chamber of the furnace.

Kenneth and Sandra Waltee were married November 8, 1963, and except for occasional visits with their respective parents they maintained their own home separate and apart from their parents. Neither of them contributed any financial assistance to their respective parents subsequent to their marriage. On the contrary, the parents occasionally gave financial assistance to the young couple.

At the conclusion of the evidence the trial court ruled, as a matter of law, that there was no evidence to support either of defendant's affirmative defenses of assumption of risk or contributory negligence.

Appellant has specified three issues for review.

1. The court erred when it dismissed the affirmative defenses of contributory negligence and assumption of risk. Contributory Negligence. Any negligence by the Waltees, if there was any, is immaterial in this case. Before this defense could be submitted to the jury there would have to have been evidence showing, or tending to show, that such negligence was the cause of the injury. Stahl v. Farmers Union Oil Co., 145 Mont. 106, 114, 399 P.2d 763; DeVerniero v. Eby, ____Mont.____, 496 P.2d 290, 29 St.Rep. 273; Stephens v. Brown, ____Mont.____, 503 P.2d 667, 29 St.Rep. 986. Where, as here, there was no evidence that the injury was caused by the Waltee's negligence, if any, the trial court properly struck the defense of contributory neg-ligence.

- 4 -

Assumption of Risk. Before this defense can be submitted to the jury there must be some evidence in the record that the injured party had: (1) knowledge, actual or implied, of the particular condition; (2) appreciation of this condition as dangerous; (3) voluntarily remained or continued in the face of the known dangerous condition; (4) received an injury resulting as the usual and probable consequences of this dangerous condition. D'Hoodge v. McCann, 151 Mont. 353, 363, 443 P.2d 747. The evidence shows defendant's repairman had advised the Waltees that the dangerous condition had been repaired and that it would be safe for them to remain in the house. Therefore, defendant did not sustain the burden of carrying forward the evidence to sustain this defense and the trial court properly struck the defense.

2. That the verdicts were excessive.

It is appellant's contention that any verdict could not exceed the amount of the specific pecuniary loss testified to in the evidence and as there was no direct evidence on this point the verdicts are excessive. It has long been the law of this state that direct evidence of specific pecuniary loss in death cases is unnecessary. In Burns v. Eminger, 84 Mont. 397, 411, 276 P. 437, the court said:

> " * * * any award must, of necessity, be based upon conjecture and surmise, and any amount of testimony would be of little aid to the jury. The matter must be left largely to the judgment and common sense of the ordinary jury called to determine it * * *".

Appellant contends the verdicts are so excessive as to show that they were given under the influence of passion and prejudice. Damages must be left to the enlightened consciences of the jurors, aided by the circumstances of each particular case. Flaherty v. Butte Electric Ry. Co., 42 Mont. 89, 95, 111

- 5 -

P. 348. The test for determining whether a verdict is excessive has been stated in Jewett v. Gleason, 104 Mont. 63, 71, 65 P.2d 3:

> "The rule in such a situation is no different from that obtaining in all controverted fact issues properly submitted to juries. It is not a question of the amount this court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it must be, in the light most favorable to the plaintiff. It is when the testimony - the facts of the case - fails to support and justify a verdict and judgment that the conscience and understanding of the court are shocked."

Also see: Parini v. Lanch, 148 Mont. 188, 194, 418 P.2d 861; Sanders v. Mount Haggin Livestock Co, ____Mont.____, 500 P.2d 397, 29 St.Rep. 686; Kelleher v. State, ____Mont.____, 503 P.2d 29, 29 St.Rep. 897. The facts of this case support and justify the verdict.

3. The trial court erred when it failed to give certain proposed instructions.

Appellant's proposed instruction No. 12 was refused by the trial court, on its own motion, on the grounds that it would tend to confuse the jury. Appellant made no offer to amend the proposed instruction or to offer other instructions which would explain it, thus meeting the court's objection. Under these circumstances appellant cannot now object to the trial court's refusal to give the offered instruction. In Platt v. Clark, 141 Mont. 376, 380, 378 P.2d 235, this Court said:

> "The record shows that the refusal of said instruction was acquiesced in by the plaintiff. No objection was made nor was an exception taken to the refusal of the court to give it. Plaintiffs therefore cannot be heard at this stage of the appeal to raise this objection."

Other proposed instructions refused by the trial court

- 6 -

pertain to the affirmative defenses; as such defenses were excluded, those instructions were properly denied.

The judgment of the district court is affirmed.

_____
Hon. Alfred B. Coate, District Judge,
sitting in place of Mr. Justice John
C. Harrison.

We concur:

_____
Chief Justice

_____

_____

_____
Hon. Robert Boyd, District Judge
sitting in place of Mr. Justice
Gene B. Daly.