C. RICHARD COLLINS *et al.*, Plaintiffs-Appellants, *v.* U. T. MUSGRAVE *et al.*, Defendants-Appellees.

(No. 73-187; ▉▉▉▉▉▉▉▉▉▉▉▉)

Fifth District—March 13, 1975.

*Rehearing denied June 9, 1975.*

Robert S. Hill, of Benton, for appellants.

Mitchell & Armstrong, Ltd., of Marion, for appellee Ford Motor Company.

Fowler & Novick, of Marion, for appellee U. T. Musgrave.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff appeals from a judgment of the trial court in favor of the defendants in a case wherein the plaintiffs claimed the defendants were strictly liable to plaintiffs because of an accident caused by a claimed design defect in an axle assembly unit manufactured by defendant Ford Motor Company (Ford) and sold by defendant Musgrave Ford Sales (Musgrave).

There are two principal questions in this appeal:

(1) Was the axle unit unreasonably dangerous as a matter of law?

(2) Was there sufficient evidence to submit the defense of assumption of the risk to the jury?

In 1960 the plaintiff Lew Cushman, a supervisor for plaintiff Collins Brothers Oil Company (Collins), received a new 1960 Ford F-100 half-ton truck for business use. Customary maintenance and repairs were performed by Musgrave. On January 8, 1962, Cushman was driving the truck when he suddenly lost acceleration. He coasted into a nearby driveway and was able to stop the truck safely. Upon inspecting the vehicle,

Cushman noticed that the right rear wheel protruded out several inches from the fender. Cushman had the truck towed to Musgrave where he instructed the service manager to fix anything that was found wrong. While the record shows that Cushman was familiar with automobile mechanics, he did not observe the repairs. Musgrave's service manager testified that a new axle unit assembly provided by Ford was installed in the truck. After the repairs were completed, Cushman picked up the truck and continued to use it in Collins's business.

On February 17, 1962, Cushman was driving on Highway 15 near Fairfield at a speed of approximately 55 miles per hour. As he approached the city limits he decreased his speed by releasing the accelerator. When he came to a gradual incline before entering the main square he tried to accelerate, but found that the accelerator did not work. Realizing that something was wrong and not wanting to stop on the highway, Cushman decided to coast into Musgrave's lot which was just ahead. As he entered the lot, he applied the foot brakes and then the hand brake, but found them inoperative. The only control he had over the vehicle was steering. He steered away from a gas main and several automobiles and finally stopped the truck by hitting a brick wall of an abutting Buick garage. The wall collapsed inward, injuring one Ed Shaw. Cushman testified that when he inspected the truck, he found the right rear wheel protruding out, beyond the fender, ball bearings lying on the ground beneath the axle, and smoke rising from the brake-drum area.

Shaw subsequently filed an action against Cushman and Collins and recovered $19,000 in a post-verdict settlement which was paid by the Collins's insurer, the plaintiff United States Fidelity and Guaranty Company. The plaintiffs thereupon brought this action alleging in damages the sum of $19,000 paid by the plaintiff insurance company and $1756.50 in attorneys' fees paid in defending the action of Shaw.

Plaintiffs' complaint alleged that the right rear axle assembly, designed and manufactured by defendant Ford and installed by defendant Musgrave, was so assembled that when a sealed bearing in the axle assembly failed, the right rear wheel attached to the assembly moved out of position and impaired the braking system and transmission of power to the rear wheels. Detailed evidence was presented by the plaintiffs in support of their contention. Plaintiffs further alleged that the defect was an unreasonably dangerous condition existing at the time the axle left Ford's control and was the proximate cause of Cushman's February 17 accident. The defendants raised the affirmative defenses of misuse of product and assumption of risk. The jury was instructed on both defenses. A special interrogatory concerning assumption of risk was submitted to the jury. The jury returned a verdict that answered the interrogatory in the af-

firmative and that was in favor of the defendants. Judgment was entered on the verdict.

The plaintiffs first contend that the axle assembly was unreasonably dangerous as a matter of law. On the facts of this case, the plaintiffs' argument is persuasive. They reason that since they proved that a failure of the sealed bearing within the axle assembly caused the driver to lose all control of the car except for steering, the evidence so favored a finding of an unreasonably dangerous condition that a contrary verdict could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) Defendants contend that the existence of a condition does not make it an unreasonably dangerous condition. The fact that a condition is dangerous does not necessarily mean that it is an unreasonably dangerous condition. The evidence presented created a fact issue from which the jury was entitled to conclude that the condition complained of was not an unreasonably dangerous condition.

■ ■ We have found no authority in Illinois or elsewhere for holding a product not inherently dangerous, such as drugs, unreasonably dangerous as a matter of law. Several jurisdictions have for various reasons abandoned the unreasonably dangerous requirement. (*Clary v. Fifth Avenue Chrysler Center, Inc.*, 454 P.2d 244 (Alas. 1969); *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972); *Glass v. Ford Motor Co.*, 123 N.J. Super. 599, 304 A.2d 562 (1973).) The majority of jurisdictions, however, including Illinois, follow section 402A of the Second Restatement of the Law of Torts in requiring proof of an unreasonably dangerous condition. In Illinois, a product must be shown to be unreasonably dangerous and the question is one for the jury. *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182; *Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1.

Was there sufficient evidentiary basis to justify submitting the affirmative defense of assumption of risk to the jury?

■ ■ In a strict products liability tort action, plaintiff need not prove exercise of due care, but his recovery is barred if defendant proves that plaintiff knew the product was in a dangerous condition and proceeded nonetheless to use the product in disregard of the known danger. (*Sweeney v. Max A. R. Matthews & Co.*, 46 Ill.2d 64, 264 N.E.2d 170; *Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E.2d 305.) Assumption of risk is an affirmative defense to be alleged and proved by defendant. (*Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.*, 16 Ill.App.3d 638, 306 N.E.2d 337.) The burden is on defendant to prove that plaintiff knew that the product was defective and that he appreciated the danger, but nevertheless deliberately and unreasonably exposed himself to the danger, or that the defect and danger were so open

and obvious that plaintiff *must* have comprehended them. (*Sweeney v. Max A. R. Matthews & Co.*, 94 Ill.App.2d 6, *aff'd*, 46 Ill.2d 64, 264 N.E. 2d 170. See also Restatement (Second) of Torts § 402A, comment *n* (1965).) Thus, on the facts involved in this appeal, defendants would have to prove that plaintiff Cushman received some substantial forewarning that the wheel axle assembly on his Ford pickup truck would fail, thus impairing the functioning of his brakes and his accelerator. The record shows that plaintiff Cushman was generally familiar with automobile mechanics. Nonetheless, the defect involved here was such that the nature of the danger did not become apparent until the accident actually occurred. Thus it cannot be said that Cushman *must* have known of the danger despite his testimony to the contrary.

In *Williams v. Ford Motor Co.*, 454 S.W.2d 611 (Mo. App. 1970), an action under strict liability in tort against the manufacturer and seller of a Ford automobile by a buyer, for injuries sustained when the steering mechanism on a Ford automobile failed, the evidence showed that the only defect the plaintiff had discovered prior to the occurrence of the accident was that the car was difficult to steer, that the steering had been repaired a few hours previously, and that the defect was not discoverable until the accident had occurred. The court ruled that there was not sufficient evidence to justify submission of the defense of assumption of risk to the jury on the ground that plaintiff could not have comprehended or appreciated the danger. (454 S.W.2d 611, 619.) In *Northwest Airlines, Inc. v. Glenn L. Martin Co.*, 224 F.2d 120 (6th Cir. 1955), an action against an air craft manufacturer for negligence in design of an airplane, evidence that plaintiff's engineers and inspectors had observed the manufacture of the plane, that one of plaintiff's engineers was familiar with certain scientific literature indicating that the metal used in manufacturing the planes was inappropriate was held to be insufficient to warrant instruction on assumption of risk. The court explained that there was no evidence that plaintiff Northwest had knowledge of or appreciated the risk of danger or that the danger was so obvious that plaintiff's representatives who did observe the manufacture must have appreciated the danger. (224 F.2d 120, 125, 126.) In *Waltee v. Petrolane, Inc.*, 511 P.2d 975 (Mont. 1973), an action against a propane gas supplier for the wrongful deaths caused by monoxide poisoning produced by a propane furnace, the evidence showed that defendant's repairmen had advised plaintiff's decedents that the dangerous condition in the furnace had been repaired and that it would be safe to remain in their house. The trial court ruled that the defendant did not sustain its burden of carrying forward enough evidence to support the defense of assumption of risk. On appeal, the State supreme court held

that the trial court properly struck the defense. See also *O'Keefe v. Boeing Co.*, 335 F.Supp. 1104, 1121 (S.D. N.Y. 1971) (plaintiff did not assume risk as matter of law); *Brown v. Quick Mix Co.*, 75 Wash. 2d 833, 836, 454 P.2d 205, 208 (1969).

The general rule, therefore, is that if plaintiff surrenders his better judgment upon an assurance, whether explicit or implicit, that the situation is safe, will be remedied, or upon a promise of protection, he does not assume the risk. (Prosser, Law of Torts § 103 (4th ed. 1971). See also *Oltmanns v. Driver*, 252 Iowa 1066, 109 N.W.2d 446 (1961).) The record in this case shows that after plaintiff Cushman's first mishap on January 8, 1962, he instructed defendant Musgrave's service manager to repair all that was wrong with the Ford pickup truck involved here. Defendant Musgrave's repairmen installed a new wheel axle assembly, and the truck was then returned to Cushman upon an implicit assurance that repairs were complete and that the truck was safe for normal use. Slightly more than one month later, on February 17, 1962, a second mishap, apparently caused by failure of the new axle assembly unit, culminated in the injuries involved in this appeal. Plaintiffs cannot be held to have assumed the risk of harm in the face of defendant Musgrave's implicit assurance that there was no danger of harm. See *Valmas Drug Co. v. Smoots*, 269 F. 356 (6th Cir. 1920).

■■ Defendants suggest that Cushman's decision to turn into the Musgrave parking lot rather than to stop on the highway was embraced within the concept of assumption of risk. Even assuming, *arguendo*, that Cushman was traveling at an excessive rate of speed, these actions do not constitute assumption of risk because they do not demonstrate that plaintiff was aware of any defective condition of the truck—they raise only the possibility of contributory negligence which is not a defense in a products liability action. See *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill.2d 356, 303 N.E.2d 382, 385.) Prosser in his treatise on the law of torts remarks that the defense of assumption of risk is narrowly confined by two requirements—plaintiff must know and understand the risk and his choice must be entirely voluntary. (Prosser, Law of Torts § 103 (4th ed. 1971).) Under this analysis, Cushman's split-second decision to turn into the Musgrave lot rather than to stop on the highway upon discovering the loss of acceleration cannot be termed an assumption of risk. It cannot be said that a choice made under emergency conditions is entirely voluntary. See *Marshall v. Ranne*, 511 S.W. 2d 255, 259-60 (Tex. 1974).

This case is distinguishable from *Kirby v. General Motors Corp.*, 10 Ill.App.3d 92, 293 N.E.2d 345, an action against a truck manufacturer for injuries sustained when the steering mechanism failed. In *Kirby*,

the truck driver, who had previously experienced difficulty with the steering, performed the repairs himself and continued to drive the vehicle. The court held that the driver assumed the risk as a matter of law. In the instant case, however, plaintiff Cushman, although he was generally knowledgeable of automobile mechanics, never performed repairs on the Ford truck and instead turned the vehicle over to defendant Musgrave for general servicing and for repair.

■■ Although assumption of risk is ordinarily a question of fact for the jury, it is a matter of law when the pertinent facts are undisputed and present a situation so plain that different conclusions cannot be drawn. (*Fore v. Vermeer Manufacturing Co.*, 7 Ill.App.3d 346, 387 N.E. 2d 526, 528.) After close examination of the record in this cause, we find that the evidence was insufficient to justify submission of the defense of assumption of risk to the jury.

■■ For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for a new trial. Upon retrial, neither the issue of contributory negligence nor assumption of the risk will be submitted to the jury.

Reversed and remanded with directions.

CARTER and CREBS, JJ., concur.