No. 81-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

GARY P. SWANSON (fatal), KIM SWANSON
COLLINS, formerly known as Kim R.
Swanson, Personal Representative of Estate
of GARY P. SWANSON,

                    Appellant and Claimant,

        vs.

CHAMPION INTERNATIONAL CORPORATION,
Employer, and LIBERTY MUTUAL INSURANCE
COMPANY,

                    Defendants and Respondents.

---

Appeal from:   Workers' Compensation Court,
               Honorable William E. Hunt, Judge presiding

Counsel of Record:

    For Appellant:

        James J. Benn argued, Missoula, Montana

    For Respondents:

        Garlington, Lohn and Robinson, Missoula, Montana
        Robert Sheridan argued, Missoula, Montana

---

                    Submitted:   December 1, 1981

                        Decided:      APR 8  1982

Filed:  APR 9 - 1982

_Thomas J. Kearney_
                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This case comes to us on appeal from the Workers' Compensation Court, which entered an order affirming a determination by the Workers' Compensation Division that Liberty Mutual Insurance Company was entitled to $24,000 out of a settlement of $56,250 that Kim Swanson had received for claims arising out of the death of her husband Gary P. Swanson.

Gary P. Swanson, an employee of Champion International Corporation, died in an airplane crash on July 14, 1976 in the course of performing an aerial timber cruise for his employer. At the time of the accident, Champion was insured for its Workers' Compensation liabilities by Liberty Mutual. The insurer paid a total amount of $37,862.75 in benefits to Kim R. Swanson, the surviving spouse of the decedent, in full satisfaction of the Workers' Compensation obligations of Champion and Liberty Mutual Insurance Company.

The airplane in which the decedent Gary P. Swanson was killed was owned by Stockhill Aviation of Kalispell. Stockhill's insurer, National Aviation Underwriters, Inc. brought a declaratory judgment action contesting coverage. On April 12, 1978, counsel for Kim Swanson wrote to counsel for Liberty Mutual "tendering" participation under section 39-71-414(2), MCA, in the declaratory judgment suit, and asking for further participation by Liberty Mutual in a proposed action against Cessna Aircraft, on a products liability claim against the manufacturer. On May 5, 1978, Liberty Mutual, through its counsel, pointed out that it was already participating in the declaratory judgment action and that it would thereafter participate in any subsequent action by the widow against

-2-

Stockhill Aviation. Liberty Mutual declined to participate in a proposed lawsuit against Cessna upon the ground that it had only a remote chance of success.

While the declaratory judgment action was pending, Kim R. Swanson, through her attorney, settled with National Aviation Underwriters, Inc., the insurer for Stockhill, all of her claims against Stockhill for the sum of $56,250. As between Stockhill and Kim R. Swanson, the settlement was allocated $3,000 to the survival action, and $53,250 to the wrongful death action.

It is not clear in the record that suit, as distinguished from claim, had been instituted against Stockhill Aviation, Inc. by Kim R. Swanson either on the survival action or the wrongful death action.

Liberty Mutual filed a petition before the Workers' Compensation Division asking the Division to determine Liberty Mutual's subrogation rights in the settlement that had been effectuated. The division by order determined that Liberty Mutual was entitled to a subrogation interest out of the settlement of $24,000.

Kim R. Swanson appealed the decision of the Workers' Compensation Division to the Workers' Compensation Court. There Kim R. Swanson contended that the settlement included payment by the responsible third party for noneconomic as well as economic losses sustained by the claimant and that such noneconomic losses were the property right of Kim R. Swanson and not subject to the subrogation claims of Liberty Mutual. The Workers' Compensation Court, relying on Fisher v. Missoula White Pine Sash Co. (1974), 164 Mont. 41, 518 P.2d 795, concluded that the Workers' Compensation Act does

-3-

not provide a differentiation between those portions of the settlement allocated to wrongful death and survival claims, or to economic and noneconomic losses, or to the wife and children. On that basis, the Workers' Compensation Court affirmed the division order that Liberty Mutual was entitled to subrogation of $24,000 from the settlement.

Kim R. Swanson duly appealed the order of the Workers' Compensation Court to this Court.

We frame the issue before us thus: where the death of an employee in the course of his employment is caused by the neglect of a party other than his employer or fellow employees (section 39-71-412, MCA) and the heirs of the decedent employee receive proceeds from settlement or judgment from the responsible third party, does the Workers' Compensation lien of decedent's employer or its insurer attach to that portion of the proceeds which may represent noneconomic damages to the heirs?

Counsel for Kim R. Swanson has carefully limited the issue to those noneconomic damages that she would have received in her personal right which may be part of the settlement.

At first blush, it would seem that this case is controlled by this Court's earlier holding in Fisher, supra. There, we held that the Workers' Compensation Act does not in its subrogation clause differentiate between survival actions and actions for wrongful death. Therefore, this Court reasoned, all recoveries made through either claim of action were subject to the subrogation interest of the employer or the insurer if the death of the decedent arose out of or in the course of his employment.

-4-

The case at bar presents a facet slightly different than the court faced in Fisher. Here the claimant widow contends squarely that the noneconomic damages recovered by her as a part of the settlement of both causes of action against the responsible third party are not subject to subrogation by the employer or its insurer. It is a contention that leads us to re-examine the totality of the holding in Fisher for two reasons: (1) the intrinsic differences in the sources and effect of recoveries between survival actions and wrongful death actions were not discussed in Fisher; and, (2) the changes in the subrogation provisions of the Workers' Compensation Act since Fisher which require a reassessment of the bases on which Fisher is grounded.

We look first at the causes of action that are open in Montana to the survivors of a decedent whose death is caused by the negligence of another.

One cause of action is the "survival" action. It arises from section 27-1-501, MCA, the Montana version of Lord Campbell's Act. By this statute, a cause of action, including tort actions existing during the lifetime of a person survive his death, and the cause may be pursued against the responsible party by his personal representative. See section 72-3-604, MCA. The damages that may be recovered in the survival cause of action for the death of the decedent through tort include his lost earnings from the time of his injury to his death; the present value of his reasonable earnings during his life expectancy, Krohmer v. Dahl (1965), 145 Mont. 491, 402 P.2d 979; the medical and funeral expenses incurred by him as a result of the tort; reasonable compensation for his pain and suffering, and other special damages. Beeler v. Butte and London Copper Development Co. (1910), 41 Mont. 465, 478, 110 P. 528.

Note that the source of the damages recoverable in the survival action are personal to the decedent. They do not include any damages suffered by the decedent's widow, children or other heirs. Marinkovich v. Tierney (1932), 93 Mont. 72, 86, 17 P.2d 93, 96.

Note further the effect of recovery of such damages by settlement or satisfaction of judgment for the survival claim. Such damages belong to the decedent's estate. They are subject to the claims of his creditors. They must be included in any computation to determine if inheritance taxes are due from his estate.

Only the personal representative may sue for the damages suffered by the decedent in survival actions. Section 27-1-501, MCA. Neither the widow nor any other heir has a legal right to pursue such an action unless appointed as a personal representative. The damages suffered are so personal to the decedent that this Court has held that no survival action exists if the decedent's death is instantaneous. Dillon v. Great Northern Ry. Co. (1909), 38 Mont. 485, 502, 100 P. 960, 966. Reason: the cause of action must have existed in the lifetime of the decedent to survive him under the survival statute.

The distribution by the personal representative of damages recovered in a survival action is controlled by the law of probate. After payment of creditors, expenses of administration and inheritance taxes, if any, the personal representative distributes the damage proceeds as a part of the estate of the decedent, controlled by his will or by the laws of intestate succession.

Since the subrogation clause of the Workers' Compensation Act refers to the personal representative, section 39-71-414,

MCA, it is clear that the cause of action embraced in the survival proviso of section 27-1-501, MCA, is subject to the employer's subrogation rights under 37-71-414, MCA. The employer or his insurer is in effect and by this statute a super creditor of the estate of the decedent, having a claim prior to any other creditor of the decedent or tax agency to that portion of the decedent's estate included in the employer's subrogation rights. Especially the subrogation claim comes before any heir's right of distribution of the recovered damages from the estate.

We must be conscious, however, of the point that the damages recovered by the personal representative in the survival action may include economic and noneconomic items. In addition to medical costs, funeral expenses, and wage-loss damages, the pain, suffering, and disfigurement of the decedent may have been compensated, Beeler, supra, and even punitive damages awarded. Nonetheless, the subrogation clause is clear. The employer or his insurer is entitled to subrogation from the personal representative without regard to the nature of the damages for which the decedent through his estate is compensated in the survival action. Section 39-71-414(1), MCA. Thus far we are in agreement with the holding in Fisher.

Now let us examine the nature, source, and effect of damages recoverable under the "wrongful death" statute.

By virtue of section 27-1-513, MCA, a cause of action for the wrongful death of one not a minor (for the wrongful death of a minor, see section 27-1-512, MCA; the result is the same) is created and vests in the heirs of the decedent. The cause of action may be prosecuted by the personal represent-ative or by the heirs. Section 27-1-513, MCA.

-7-

The law is not specific about the source of damages in a wrongful death action. It provides that "damages may be given as under all the circumstances of the case may be just." Section 27-1-323, MCA. Generally the proof of damages under this cause of action will include loss of consortium by a spouse, Mize v. Rocky Mountain Bell Telephone Co. (1909), 38 Mont. 521, 535, 100 P. 971, 974; the loss of comfort and society of the decedent suffered by the surviving heirs; and the reasonable value of the contributions in money that the decedent would reasonably have made for the support, education, training and care of the heirs during the respective life expectancies of the decedent and the survivors. Hennessey v. Burlington Transp. Co. (U.S.D.C. Dist. Mont. 1950), 103 F.Supp. 660, 665. No specific pecuniary loss need be shown. Waltee v. Petrolane, Inc. (1973), 162 Mont. 317, 321, 511 P.2d 975, 978.

Note again that the source of the damages recoverable in a wrongful death action is personal to the survivors of the decedent. The damages are not those of the decedent, but of the heirs by reason of his death. The action may be prosecuted without regard to whether the decedent's death was instantaneous.

Again note further the effect of the recovery of damages in a wrongful death cause of action by settlement or by satisfaction of judgment. Such damages do not belong to the decedent's estate. They are not subject to the claims of decedent's creditors. They are not a part of the estate for the determination of inheritance taxes. They pertain to the personal loss of the survivors. Though the personal representative of the decedent, under the wrongful death statute, may sue the responsible party, any recovery made by the

-8-

personal representative in the wrongful death claim is not

in his capacity as personal representative. He is a trustee

of the moneys for the person entitled. Batchoff v. Butte Pacific

Copper Co. (1921), 60 Mont. 179, 183-184, 198 P. 132, 134.

When a wrongful death action is prosecuted, the damages

are returned by general verdict, covering all of the heirs

involved. The jury is not given the duty of ascribing so

much to one heir and so much to another. Rather, the trial

court, after the verdict, is given the task of allocating

the money damages among the heirs. State ex rel. Carroll v.

District Court (1961), 139 Mont. 367, 372, 364 P.2d 739, 741.

The distribution of the damages to the heirs is not controlled

by the decedent's will or by the laws of intestate succession.

This Court has never had occasion to examine the damages

recoverable in a wrongful death action as economic or non-

economic in nature. Who is to say? Such damages will

usually be founded on such factors as the loss of counsel,

protection, aid, comfort, guidance and society of the decedent,

the loss of consortium, and the loss by the survivors of

reasonable support, contributions, and the opportunity for

education or training from the decedent. The loss of support

or education is not measured by the lost future earnings of

the decedent, per se, although proof of such earnings is

necessary in wrongful death actions. Rather, it is measured

in terms of the needs of the heirs which the decedent would

reasonably have supplied to the heirs had he lived.

In any event, the damages recoverable in a wrongful

death action are so personal to the heirs that the subrogation

clause of the Workers' Compensation Act must be stretched to

the fullest extent to include them. The obvious intent of

the wrongful death statute is to provide a recovery for

-9-

losses not covered by ~~Lord Campbell's Act~~ *the survival action*, for heirs who might otherwise have no recovery for their personal loss, especially if the death of the decedent were instantaneous. The heirs were not parties to the employment contract that existed between the employer and the employee-decedent. To construe the compensation subrogation clause as including the damages appointed under the wrongful death statute is to lessen the personal rights of heirs of employees as compared to the heirs of noncompensated decedents. There exists in that light a conflict between the wrongful death statutes on the one hand, which seek to provide succor for heirs, and the subrogation clause on the other, which seeks to invade that succor.

Then there is the nature of subrogation itself. "Subrogation" has its root in the latin "subrogare", to pray under or through. It is the right of one who has paid what another should have paid to recover the payment from the party justly responsible. Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 524, 565 P.2d 628, 630. Compensation payments are of two kinds: (1) for medical or funeral expenses incurred, and, (2) payments in lieu of wages. These are the items of damages, as we have shown above, that are recoverable in the decedent's estate through the survival action. (It is true, however, that medical and burial expenses can be reimbursed through the wrongful death action.) It is in the survival action that "the party justly responsible" ordinarily makes recompense for the expenses incurred and wages lost to the decedent. It is there that the subrogation rights of the employer, by the nature of subrogation should reach.

We have said that there is another factor, in looking at Fisher, that we should consider: namely, the changes in

-10-

the subrogation clauses as they existed at the time of Fisher to the clauses that now apply to the case at bar.

The statute in effect when Fisher was decided was section 92-204, R.C.M. 1947. With respect to subrogation, it provided in pertinent part:

"'. . . In the event said employee shall prosecute an action for damages for or on account of such injuries so received, he shall not be deprived of his right to receive compensation but such compensation shall be received by him in addition to and independent of his right to bring action for such damages, provided, that in the event said employee, or in case of his death, his personal representative, shall bring such action, then the employer or insurance carrier paying such compensation shall be subrogated only to the extent of either one-half (1/2) of the gross amount paid at time of bringing action and the amount eventually to be awarded to such employee as compensation under the workmen's compensation law, or one-half (1/2) of the amount recovered and paid to such employee in settlement of, or by judgment in said action, whichever is the lesser amount. All expense of prosecuting such action shall be borne by the employee, or if the employee shall fail to bring such action or make settlement of his cause of action within six (6) months from the time such injury is received, the employer or insurance carrier who pays such compensation may thereafter bring such action and thus become entitled to all of the amount received from the prosecution of such action up to the amount paid the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee . . . '" 164 Mont. 41, 46-47, 518 P.2d 795, 798. (Emphasis added.)

The legislature amended section 92-204, R.C.M. 1947, by breaking the complex and wandering statute up into several components. The result is that the pertinent parts of our statutes as they apply to this case are as follows:

"39-71-412. Liability of third party other than employer or fellow employee--additional cause of action.

". . . Whenever such event occurs to an employee while performing the duties of his employment and such event is caused by the act or omission of some persons or corporations other than his employer or the servants or employees of his employer, the employee or in case of his death his heirs or personal representative shall, in addition to the right to receive compensation under this chapter,

-11-

have a right to prosecute any cause of action he may have for damages against such persons or corporations."

". . .

"39-71-414. Subrogation. (1) If an action is prosecuted as provided for in 39-71-412 or 39-71-413, and except as otherwise provided in this section, the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act. The insurers right of subrogation is a first lien on the claim, judgment, or recovery.

"(2) (a) If the injured employee intends to institute the third party action, he shall give the insurer reasonable notice of his intention to institute the action.

"(b) The injured employee may request that the insurer pay a proportionate share of the reasonable cost of the action, including attorneys' fees.

"(c) The insurer may elect not to participate in the cost of the action. If this election is made, the insurer waives 50% of its subrogation rights granted by this section.

"(d) If the injured employee or the employee's personal representative institutes the action, the employee is entitled to at least one-third of the amount recovered by judgment or settlement less a proportionate share of reasonable costs, including attorneys' fees, if the amount of recovery is insufficient to provide the employee with that amount after payment of subrogation.

"(3) If an injured employee refuses or fails to institute the third party action within 1 year from the date of injury, the insurer may institute the action in the name of the employee and for the employee's benefit or that of the employee's personal representative. If the insurer institutes the action, it shall pay to the employee any amount received by judgment or settlement which is in excess of the amounts paid or to be paid under the Workers' Compensation Act after the insurer's reasonable costs, including attorneys' fees for prosecuting the action, have been deducted from the recovery."

Especially pertinent to our discussion here is the foregoing provision of section 39-71-414(3), MCA, that if the injured employee refuses or fails to institute the third party action, the insurer may institute it for the benefit of "the employee's personal representative." No mention is made in

-12-

that statute of an action "for the benefit of the heirs"
The statute could not be construed as giving the employer or
its insurer the right to institute a wrongful death action.
While it is true, as we have pointed out above, that a
personal representative may sue for the wrongful death
rights of the heirs, nonetheless if recovery is made, the
personal representative holds those proceeds, not as a
personal representative, but as a trustee of the moneys for
the benefit of the heirs.  Batchoff, supra.

More important is the change that was made in the 1977
Montana Legislature of the provisions that relate to the
protection of the employer through the exclusivity of the
Workers' Compensation Act.  In Fisher, this Court placed
great reliance on that part of former section 92-204, R.C.M.
1947, which stated, "and in case of death shall bind his
personal representative, and all persons having any right or
claim to compensation for his injury or death," as meaning
that the recovery rights of the heirs were subject to the
subrogation rights of the employer.  164 Mont. at 45, 518
P.2d at 797.

The 1977 amendment removed this language from the sub-
rogation portions of former section 92-204, and established
a separate statute which related to the exclusivity of the
Workers' Compensation Act as to the employer.  The intent of
the legislature that the heirs were bound as to exclusivity
but not as to subrogation is now more clear.  That statute
now reads:

> "39-71-411.  Provisions of chapter exclusive
> remedy--nonliability of insured employer.  For
> all employments covered under the Workers'
> Compensation Act or for which an election has
> been made for coverage under this chapter, the
> provisions of this chapter are exclusive.  Except

-13-

as provided in part 5 of this chapter for uninsured
employers and except as otherwise provided in
the Workers' Compensation Act, an employer is not
subject to any liability whatever for the death of
or personal injury to an employee covered by the
Workers' Compensation Act or for any claims for
contribution or indemnity asserted by a third person
from whom damages are sought on account of such
injuries or death.  The Workers' Compensation Act
binds the employee himself, and in case of death
binds his personal representative and all persons
having any right or claim to compensation for his
injury or death, as well as the employer and the
servants and employees of such employer and those
conducting his business during liquidation, bank-
ruptcy, or insolvency."

A study of the foregoing statute will demonstrate that

the inclusion of the words "all persons having any right or

claim to compensation for his injury or death" is intended

to bind those persons as to suits against the employer, not

third parties.  In that context, any reference to this

language with respect to the subrogation rights in the

succeeding statutes is to take the quoted language out of

context and away from the subject to which it is intended to

pertain.  The language relates to exclusivity; under the

present statutory scheme, it should not be construed to

include the Workers' Compensation subrogation provisions,

for in none of the present subrogation provisions is there

any indication that the legislature intended to include the

rights of heirs within the employer's subrogation lien.

We therefore conclude that under the present statutory

scheme, as it applies to this case, and because of the

intrinsic differences that exist now and have always existed

in the source and effect of recoveries made in survival

actions as distinguished from wrongful death actions,

the subrogation rights of the employer or its insurer under

the Workers' Compensation Act do not extend to recoveries

made under wrongful death claims.  To that extent, we

-14-

distinguish Fisher v. Missoula White Pine Sash Co. (1974), 164 Mont. 41, 518 P.2d 795.

Decisions of other states with respect to subrogation rights of the employer or its carrier are not helpful. The variety and shades of opinion or statutory background differ from state to state. Suffice it to say that in recognizing subrogation rights as extending to benefits received by dependents, regardless of the nature of the action, we appear to be following the trend of the majority of the decisions in the United States. Of special interest on this point is the fact that in Utah it is recognized that because of state constitutional provisions, nondependent heirs are not divested of their rights to damages as against subrogating carriers. Oliveras v. Caribou-Four Corners, Inc. (Idaho 1979), 598 P.2d 1320. In Idaho, it is provided by statute that if no dependents survive the decedent, the employer has a cause of action for the benefits paid, and the heirs separately have a right of action. Idaho Code (1972), § 223(5).

Having so concluded, we do not, however, end the discussion with regard to the rights of the widow Kim R. Swanson in this case. What has been presented to us here, in the carefully tailored issue presented by Swanson's counsel, is whether the Workers' Compensation Court should hold a hearing to determine and allocate the portion of the settlement that is referable to the economic, as distinguished from the noneconomic damages that the settlement may include. That aspect of the case requires some examination.

We pointed out above that in a survival action, the lost wages between the date of the injury and the death, and the future earnings (reduced to present value) that the decedent might have earned during his life expectancy are

-15-

proper elements of damages.  We have also pointed out
that in wrongful death actions, in determining "such damages
. . . as under all the circumstances of the case may be
just" (section 27-1-323, MCA), the jury may include as a
factor in such damages the reasonable value of the contributions
in money that the deceased would reasonably have made during
his lifetime for the support, education, training and care
of the heirs during their respective life expectancies.

It is obvious that the contributions which a decedent
might have made to his heirs for their support, maintenance,
education or training would come out of his earnings during
his lifetime. While it is true that survival actions and
wrongful death actions are separate and distinct causes of
action and that recovery of lost earnings in the survival
action, or the value of contributions in the wrongful death
action, are each proper factors for determination in those
respective cases, it is also true that in Workers' Compen-
sation cases where a death is involved, the heirs receive
benefits that represent the wages that the employee would
have received had he lived.  Under considerations of equity
and the doctrine of subrogation, therefore, apart from the
statutory provisions, it is meet and just in cases of
instantaneous death that the subrogation lien of the employer
or its insurer should extend to that portion of the recovery
made under the wrongful death claim that may represent
reasonable contributions to the heirs derived from the
earnings of the decedent.

Where the death of the employee is instantaneous, no
recovery exists under the survival action. If recovery is
made nonetheless in the wrongful death phase of the claim,
and no recovery is possible under the survival action, the

-16-

Workers' Compensation Court should determine the value of the economic damages in the settlement or the judgment. By "economic damages" we refer to those elements of damages in a wrongful death case that would have their source in the earnings of the decedent, and recompensed medical and burial expenses paid partly or wholly by the subrogating carrier. Once that portion of the wrongful death settlement or judgment is determined, the Workers' Compensation Court should apply the subrogating carriers' rights to the economic damages received by dependent heirs in the usual fashion.

Whether the Workers' Compensation Court allows subrogation out of survival proceeds, or out of wrongful death proceeds, the attorneys fees and costs would, in the absence of circumstances requiring otherwise, be allocated pro-rata between the subrogated portion and the remaining portion of the whole settlement.

The order of the Workers' Compensation Court in this case should take the following form:

(1) Amount of third party action recovery $56,250.00

(2) Attorneys' fees and costs 20,250.00

(3) Amount of recovery allocated to survival action (in instantaneous death write "none") $_____

(4) Amount of recovery in wrongful death allocation determined to represent economic damages (use a figure only if death were instantaneous, otherwise enter "none") $_____

(5) Amount of recovery subject to employer/carrier's subrogation rights (enter figure from (3) or (4)) $_____

(6) Attorneys fees and costs allocable to subrogation rights $\left[\dfrac{(5) \times (2)}{(1)}\right]$ $_____

-17-

(7) Factor to be used in determining
proportion of attorneys fees and
costs to be assumed by insurer and
claimant [(6)/(5)]                                          _____%

(8) Claimants minimum statutory entitle-
ment excluding proportionate share
of attorneys fees and costs
[(5) x 1/3]                                              $_____

(9) Insurer's maximum statutory entitle-
ment excluding proportionate share
of attorneys fees and costs
[(5) x 2/3]                                              $_____

(10) Insurer's total payments to date             $37,862.75

(11) Insurer's portion to date of attorneys
fees and cost obligation [(7)% x (6)]       $_____

(12) Net portion insurer is entitled to
from third party recovery for
payments made [(9) - (11), or (10)
whichever is the lesser]                         $_____

In the settlement of this case, counsel for the heirs

of the decedent and counsel for National Aviation Under-

writers, between themselves, allocated the sum of $3,000 to

the survival action, and the remainder of the settlement to

the wrongful death action. When subrogation is considered,

neither the court nor the Workers' Compensation Court or

Division should be bound by the allocations so made between

private counsel. We find it proper here that the Workers'

Compensation Court be directed to consider, in the absence

of a District Court determination, all of the elements that

went into the settlement arrived at, and to apportion therefrom

that portion of the settlement that represents the settlement

value of the survival action, if the decedent's death was

not instantaneous. If his death was instantaneous, then the

entire settlement should be regarded as a wrongful death

recovery and the economic damages allocated accordingly.

The order and judgment of the Workers' Compensation

Court denying the motion of Kim R. Swanson to determine the

economic and noneconomic elements of the settlement for

purposes of subrogation is hereby vacated and the cause is

remanded to the Workers' Compensation Court with instructions

to conduct hearings, and to make and enter its findings, conclusions and order determining the subrogation rights of the employer or its insurer based on the guidance of this opinion.

_____
                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

_____
Hon. Peter G. Meloy
District Judge, Sitting
for Mr. Justice Frank B.
Morrison, Jr.

Mr. Chief Justice Haswell, dissenting:

I dissent. In my view, our decision in Fisher v. Missoula White Pine and Sash Co. (1974), 164 Mont. 41, 518 P.2d 795, mandates affirmance of the order of the Workers' Compensation Court.

The majority hold that the subrogation rights of the employer and insurer do not extend to a wrongful death recovery by the heirs of the deceased employee against a third party. I find no support for this holding in the subrogation statute of the Workers' Compensation Act. Section 39-71-414, MCA. Moreover, such holding is directly contrary to our decision in Fisher.

In Fisher we held that the distinction between survival and wrongful death actions was neither preserved nor differentiated under the subrogation provisions of the Workers' Compensation Act; that such distinction finds no support in the statutory plan or purpose of the Act; that the compensatory purpose of the subrogation provision remains the same whether compensation benefits are paid to the employee or in case of his death to his surviving dependents; and accordingly the employer and insurer is subrogated to that portion of a compromise settlement that the widow received from a third party tortfeasor in a wrongful death action.

The following passages from Fisher illustrate its rationale:

"Claimant contends that any subrogation right the employer or its insurer possesses is purely statutory under section 92-204, R.C.M. 1947, of the Montana Workmen's Compensation Act. She argues that this statute grants subrogation only on derivative claims of the injured employee and has no application to wrongful death actions involving claims for damages suffered by the survivors." (Emphasis added.) 164 Mont. at 44-45, 518 P.2d at 797.

" . . .

"We reject such construction as inconsistent with the statutory plan and purpose of the Workmen's Compensation Act. The purpose of the subrogation provisions is to compensate the employer and his insurer to some extent for the additional liability they assume under the Workmen's Compensation Act for wrongful acts of independent third party tortfeasors. Koppang

- 20 -

v. Sevier, 101 Mont. 234, 53 P.2d 455. 164
Mont. at 47, 518 P.2d at 798.

" . . .

"Accordingly, the claimed distinction between
subrogation rights in survival actions and
wrongful death actions finds no support in the
statutory plan or purpose of the Workmen's
Compensation Act." 164 Mont. at 48, 518 P.2d at
799.

The majority attempt to distinguish Fisher on two grounds:
(1) statutory changes in the Workers' Compensation Act since
Fisher, and (2) the differences between wrongful death and sur-
vival actions and economic and noneconomic damages.

In reasoning that statutory changes in the Act since
Fisher require a different result in this case, the majority
ignore our decision in Tuttle v. Morrison-Knudsen Co., Inc.
(1978), 177 Mont. 168, 589 580 P.2d 1379:

"The statute under consideration [the subroga-
tion statute in the Workers' Compensation Act]
was amended in 1977. The amendments simply
cleared up the language in the statute and
divided it into two sections. They did not
make any substantive change in the statute."
(Emphasis added.)

The majority then explain at length the difference between
survival actions and wrongful death actions and economic damages
and noneconomic damages. I agree that these differences exist.
I do not agree that the legislature intended to incorporate these
differences in the Workers' Compensation Act and deny subrogation
in wrongful death recoveries against third persons.

The controlling statute provides in pertinent part:

"39-71-414. Subrogation. (1) If an action is
prosecuted as provided for in 39-71-412 [tort
action against third party] or 39-71-413 [action
against fellow employee for intentional and
malicious acts] and except as otherwise provided
in this section, the insurer is entitled to
subrogation for all compensation and benefits
paid or to be paid under the Workers'
Compensation Act." (Emphasis added.)

Here compensation and benefits under the Workers'
Compensation Act were paid to the surviving widow. She presented
a tort claim against a third party, Stockhill Aviation, who paid
her $56,250. Under the plain language of the Act quoted above,

the Workers' Compensation insurer is entitled to subrogation for all compensation and benefits paid. No distinction is made between survival and wrongful death actions, between instantaneous and prolonged death or between economic and noneconomic damages.

The majority have simply engaged in some judicial legislation to justify the result they seek. In the process they have denied effect to Fisher and have ignored Tuttle.

_____
Chief Justice