JOHN KYLE NIFFENEGGER, Plaintiff-Appellee, *v.* LAKELAND
CONSTRUCTION CO., Defendant-Appellant.

Second District    No. 80-25

Opinion filed April 28, 1981.

Joseph P. Condon, of Joslyn & Green, of Crystal Lake, for appellant.

Leonard M. Ring, Warren E. Abrahamson and Linda Ann Prasil, all of Leonard Ring & Associates, of Chicago, and Herbert H. Franks, of Franks & Schmidt, of Marengo, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, John Kyle Niffenegger, an employee of H. J. Curran Contracting Co. (Curran), was injured when an asphalt spreading machine owned by the defendant, Lakeland Construction Co. (Lakeland), ran over his foot. The defendant appeals from a judgment entered on a jury verdict for plaintiff. It contends that the trial court erred in ruling on the motions of the defendant for a directed verdict or for a judgment *n.o.v.*, that the jury was improperly instructed and that the verdict was contrary to the manifest weight of the evidence.

At the time of the accident the plaintiff was working in front of an asphalt spreading machine which had been leased to Curran by Lakeland. The machine was being used to install a shoulder along Route 120 between Woodstock and McHenry. Plaintiff testified that he and several co-workers began cleaning the hopper assembly attached to the front of the machine around 5:30 p.m. on November 7, 1975. The machine was moving forward at approximately 28 feet per minute as the employees scraped asphalt off the inside walls. As plaintiff bent over the front of the hopper and reached in with his shovel, he faced the left front wheel, which rolled over his foot, causing him to be seriously injured.

The machine had been purchased by defendant from Ulrich Manufacturing Company in 1965. Alan Miller, the secretary of Lakeland, testified that Curran was one of two construction firms which leased the machine and that each firm leased it for approximately one job per year. He testified that Curran paid $55 per hour for the use of the machine and had rented it on October 29, 30 and November 7, 8. Lloyd Gondek, a Lakeland employee and operator of the asphalt spreader on the day of plaintiff's accident, testified that the machine and its operator were rented for several jobs a year. There was no testimony as to how often, if at all, defendant leases out other equipment.

There were no guards on the two front wheels of the machine, shown in the photographs to be approximately 8-9 inches in diameter, at the time it was purchased in 1965, but defendant installed guards several years

later when a worker suffered injuries similar to plaintiff's. The guard on the left front wheel was missing on November 7, 1975.

Lloyd Gondek testified that during a coffee break on the day of plaintiff's injury a Curran employee stated that there was a guard missing on the machine and that he had gotten hurt 10 to 12 years earlier before the guards had been installed. Plaintiff testified on cross-examination that he was aware that another Curran employee had been injured by the machine while in the process of cleaning it.

Defendant first argues that it was entitled to a directed verdict or a judgment *n.o.v.* on the theory that it was not engaged in the business of leasing so as to bring it within the doctrine of strict liability in tort. It argues that the machine was not released into the stream of commerce because it did not lose control of the machine and further that it was merely providing a service rather than a product.

We conclude that the trial court properly denied defendant's motions for a directed verdict and for judgment *n.o.v.*

■■ It is well established that the doctrine of strict liability applies to those who reap a profit by placing a defective product in the stream of commerce either as a seller or a lessor (*Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 13-15.) However, an isolated transaction is not subject to products liability principles. *Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 963; *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 292.

■■ Here, a Lakeland executive testified that the asphalt spreading machine is rented out for several jobs a year and another Lakeland employee testified that each job sometimes takes several weeks. The record shows that Curran leased the machine for four days at an expense of over $2,000. While defendant is not technically in the business of renting equipment as a principal part of its business, the lease of the machine is related to defendant's business. The loaning out of the machine obviously helps to defray its cost when it is not used directly by the defendant. Nor was the transaction an isolated one, since this machine itself had been rented out previously several times a year. Although the defendant is primarily a service business, when it places a defective product in the stream of commerce incident to its regular course of business it may be liable under the products liability doctrine. See *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 162. See also *Gilbert v. Stone City Construction Co.* (Ind. App. 1977), 357 N.E.2d 738, 742; *Sipari v. Villa Olivia Country Club* (1978), 63 Ill. App. 3d 985.

■■ Defendant has placed considerable emphasis on the fact that it provided the operator for the vehicle and therefore retained control. It reasons that there is not loss of control by the owner-operator under the circumstances and the instrumentality does not flow through the stream

of commerce. We cannot agree. The fact that the operator was provided does not preclude the fact that the defendant was providing a product. The essence of the requirement that the item has left defendant's control is that it must be put in a place where it encounters members of the public, not defendant's employees, who might be injured by the defect in the product. (See *Gilbert v. Stone City Construction Co.* (Ind. App. 1977), 357 N.E.2d 738, 742; *Price v. Shell Oil Co.* (Cal. 1970), 466 P.2d 722, 725-26.) In this case it was known that additional men would be needed to work with the machine. These men were to be supplied by the lessee and one of these was the injured party. We conclude that therefore defendant placed the paver in the stream of commerce and that principles of products liability apply on behalf of the plaintiff.

■■ Nor does the defendant profit from its attempt to characterize its relationship with Curran as providing a service rather than the lease of equipment. The administration of a blood transfusion may certainly be characterized as the provision of services, and yet products liability has been held to be applicable when the product supplied in connection with the services was alleged to be unreasonably dangerous. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443.) The important question for products liability is whether the defendant is an integral part of the distributive chain of the product involved, and not whether the principal function of the defendant is the provision of products or services.[1] (*Cunningham*, at 451-52.) Further, the very nature of the transaction belies its characterization as a service. The equipment was "charged out" on an hourly basis rather than contracting for the work completed. And both in terms of cost and importance, the "charge" for the driver was merely incidental to the lease of the machine.

This analysis is not changed by the recent supreme court cases holding that the provision of X rays does not come within products liability. In *Dubin v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 277, the court distinguished *Cunningham* by noting that there the blood itself was contaminated, and thus the product was unreasonably dangerous. In *Dubin*, the X rays themselves were not unreasonably dangerous, but were dangerous only because of their improper application. In *Greenberg v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 282, 291, the court specifically stated that public policy would preclude the imposition of strict liability for X rays, even if they were considered a product. In this case, the plaintiff properly placed in issue a defect in the machine itself

---

[1] Section 21.2(a)(2) of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 22.2(a)(2)) defines product as "any tangible object or goods distributed in commerce, including any service provided in connection with the product." Although the statute is not directly applicable to this case, it is indicative of the policies behind products liability.

and is not challenging its operation. Further, defendant has suggested no reason why public policy would exclude the application of products liability on the supplier of heavy equipment, nor can we find any. See *Williams v. Brown Mfg. Co.* (1970), 45 Ill. 2d 418 (trencher); *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10 (scaffold).

Defendant's principal instructional complaint is that plaintiff's issue instruction informed the jury that the defective condition of the product must have existed at the time the machine *was leased* by the defendant. It argues that Illinois Pattern Jury Instructions, Civil, Nos. 400.01 and 400.02 (2d ed. 1971) provide that the words to be used in the case of strict liability are *left the control of the defendant.* Thus, it argues that the issue of whether this was, in fact, a lease was therefore removed from the jury. The instruction as given presumes that the trial court found as a matter of law that the transaction was a lease, and the record supports this. However, it requires that at the time of delivery to the user, the product contain the defect resulting in the injury. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623.) The instruction therefore told the jury that the paver left the defendant's control at the time it was leased and we conclude the jury was properly so instructed. The jury was instructed elsewhere that defendant denied it was in the business of leasing such equipment.

We note also that the issues instruction submitted by the defendant would have required plaintiff to prove that Lakeland in the course of its business assembled, erected, manufactured and constructed the paving device in order to be subject to products liability principles. This would preclude a lessor, bailor or supplier from liability for delivering or supplying a defective product; this instruction was a misstatement of the law and thus was properly refused.

The defendant also complains of the trial court's refusal to give any instruction on the assumption of risk. Defendant argues that considering the obvious character of the risk, the testimony of Lloyd Gondek regarding statements made by the plaintiff's co-laborer Jim King that there was a guard missing and that was how he was hurt 10 or 12 years ago before they put guards on, and the visibility of the wheel that caused the injury, there was evidence to go to the jury as to whether the risk had been assumed by the plaintiff.

■■ Assumption of risk is, of course, an affirmative defense. (*Williams v. Brown Mfg. Co.* (1970), 45 Ill. 2d 418, 430-31.) The burden of pleading and proving that plaintiff assumed the risk is upon the defendant, however (*Sweeney v. Matthews & Co.* (1970), 46 Ill. 2d 64, 66), and the determination of the propriety of the trial court's action in striking an affirmative defense of assumption of risk must be predicated upon con-

sideration of the totality of the evidence in its aspect most favorable to defendant. (*Williams*, 45 Ill. 2d 418, 431; *Coty v. U. S. Slicing Machine Co.* (1978), 58 Ill. App. 3d 237, 243.) We have held that it is insufficient that the jury be able to draw the reasonable inference that an injured party would be aware of and would appreciate the danger he faces; there must also be an element of conscious conduct resulting in the injury, not satisfied by mere inadvertence or momentary inattention, so that the injured party's act may be said to be a considered choice, before the doctrine applies. See *Coty*, 58 Ill. App. 3d 237, 245-46.

■■ We conclude that as a matter of law the plaintiff in the circumstances of this case should not be held to assume the risks created by the absence of the safety guard which had been removed from the wheel of the paving machine. At the time of the accident plaintiff had never seen anyone clean the machine before, had never cleaned the machine himself, had not seen the wheel on the side he was injured prior to the accident, nor had he received any instructions on how to clean the machine. His normal duties on the job site required him to stay behind or to the side of the machine. There is evidence that plaintiff had been working behind and on the right side of the machine while a dump truck was in front of it, was thus unaware of the absence of a guard, and other employees also did not notice that the guard wasn't there. We conclude that here, as we did in *Coty*, that it would be illogical to deny recovery to a plaintiff who was injured in the very way that the safety guards on the wheels were designed to prevent. See also *L. D. Brinkman & Co.-Midwest v. National Sponge Cushion* (1979), 76 Ill. App. 3d 683, 691-93.

We also considered defendant's argument that the verdict of the jury is contrary to the manifest weight of the evidence. This contention is based on the theory that the absence of the guard on the left wheel of the machine on the date of the injury was not the proximate cause of the injury, but merely a condition. Defendant argues that the injury was caused either by the conduct of the plaintiff or that of the machine operator in failing to keep a proper lookout as opposed to any failure to guard or shield the wheel; noting that it is not objectively foreseeable that the defendant's operator would fail to notice the plaintiff standing directly in front of the moving machine or that the plaintiff would fail to appreciate the risk to his person created by the machine moving towards him as he faced it.

■■ The concept of proximate cause is the same in negligence and strict liability cases. (*Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 127.) Proximate cause exists if the injury is the natural and probable result of the negligent act or omission and is of such a character that an ordinarily prudent person would have foreseen it as a result of such negligence. (*Ney*

*v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79.) The intervention of independent, concurrent or intervening forces will not break the causal connection if such intervention was foreseeable. (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 464-65.) Defendant's employee testified that the guard would have prevented the injury; thus, the injury is a natural and probable result of the guard's omission. Questions of foreseeability are ordinarily for the jury to resolve. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13.) The evidence here indicates that the machine was often cleaned while moving and that cleaning the machine necessitated standing directly in front of it while scraping its sides. This distinguishes this case from the case relied on by defendant, *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, in which the injured party was a bystander who was not working on the machine at the time of the injury. (*Cf. Gilbert v. Stone City Construction Co.* (Ind. App. 1977), 357 N.E.2d 738.) On the record it appears that several years before the same sort of injury resulted to a worker cleaning the hopper while it was moving, and that this was why Lakeland had installed the guards. Thus, the injury was clearly foreseeable.

We conclude that the verdict was not against the manifest weight of the evidence.

The judgment is therefore affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.