TERRY McCRACKEN, Plaintiff-Appellee, *v*. WESTINGHOUSE AIR BRAKE
COMPANY, INC., Defendant-Appellant.

Fifth District   No. 80-234

Opinion filed November 25, 1981.—Rehearing denied January 5, 1982.

Dunham, Boman & Leskera, of Belleville (John W. Leskera and Russell K. Scott, of counsel), for appellant.

Baker & Scrivner, of Belleville (Roger M. Scrivner, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff-appellee, Terry McCracken, brought this action in strict products liability to recover damages for injuries he suffered allegedly caused by a defect in an earth scraper manufactured by the Westinghouse Air Brake Company, Inc. (WABCO), the defendant-appellant. McCracken alleged that the WABCO machine was unreasonably dangerous in its failure to have a shield on the back of a large cooling fan near the engine or a warning not to work near the fan while the engine was running. WABCO argued that the machine was not unreasonably dangerous and also presented an assumption of the risk defense. The trial court submitted the case to the jury under both theories advanced by the defense, and the jury returned a verdict in favor of WABCO. McCracken moved for a new trial on several grounds, and the trial court granted that motion on the basis that the verdict was against the manifest weight of the evidence. WABCO has perfected an appeal to this court from the order granting a new trial.

Because of the nature of the defense presented at trial, a detailed factual summary is appropriate. On October 4, 1976, McCracken was employed in a construction crew assigned to complete Interstate 70 near Vandalia, Illinois. McCracken worked as a "greaser" and had served in that capacity for approximately seven months. The task of a greaser is to lubricate and maintain construction equipment in the field, often while the equipment is running. During the 10 years prior to his promotion to greaser, McCracken had worked as an "oiler." The basic difference between the duties entailed by the two positions is that the oiler is generally limited to servicing one or two pieces of equipment, while a greaser is usually assigned to many machines. On October 4, 1976, McCracken was directed to service a dozen different machines on the Vandalia jobsite.

One of the pieces of equipment on the job that day was a 1970 model G-74 earth scraper manufactured by WABCO. The scraper was not de-

veloping full power, and when McCracken arrived to service it, he was directed by the operator to tap the fuel filters. A common practice is for greasers to tap the fuel filters while the engine is running on machines such as this, based on the theory that this will dislodge dirt trapped in the filters and permit the free flow of fuel.

The two filters which were the subject of this operation were located four or five inches behind a cooling fan which was about three feet in diameter. One of the filters was slightly closer to the fan than the other filter. The fan was circumscribed by a shroud, which served to funnel the air through the fan and thus increase its effectiveness. There was no shield or guard on the back side of the fan, which faced the two filters, and the scraper contained no warnings about the dangers of working in proximity to the fan. At trial, witnesses testified that all WABCO scrapers manufactured after 1970 had a complete shield surrounding the fan. McCracken also testified that the only similar equipment on the jobsite was a newer model which, according to the trial testimony, would have had a complete shield.

To comply with the operator's request to tap the fuel filters, McCracken reached into the open engine compartment and struck the rear fuel filter with his right hand while the operator depressed the accelerator. McCracken moved his hand forward to tap the front filter, but instead he placed it into the cooling fan, mangling it severely.

■■ The standard of review governing this case is that "[t]he decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown." (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 144, 357 N.E.2d 500.) Additionally, the reasons specified by the trial court in granting a new trial do not limit the scope of appellate consideration. *Varacalli v. Russell* (1978), 67 Ill. App. 3d 988, 994, 385 N.E.2d 753 (Moran, J., dissenting).

■■ ■ It is well settled in Illinois that contributory negligence is not an available defense in a strict products liability action (*Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 197, 392 N.E.2d 688), but that assumption of the risk is a defense. (*Russo v. The Range, Inc.* (1979), 76 Ill. App. 3d 236, 238, 395 N.E.2d 10.) Whether a plaintiff has assumed the risk of an activity involves a two-step inquiry, with the burden of proof on the defendant. (*Collins v. Musgrave* (1975), 28 Ill. App. 3d 307, 311, 328 N.E.2d 649; *Ruggeri v. Minnesota Mining & Manufacturing Co.* (1978), 63 Ill. App. 3d 525, 530, 380 N.E.2d 445.) First, the defendant must show that the plaintiff actually knew of the defective condition, with such knowledge determined on the basis of a subjective, rather than an objective, test. (*Russo*, 76 Ill. App. 3d 236, 238.) Second, the defendant must show that, despite awareness of the danger, the plaintiff deliberately and unreasonably exposed himself to the danger. (*Scott v. Dreis & Krump Manu-*

*facturing Co.* (1975), 26 Ill. App. 3d 971, 990, 326 N.E.2d 74.) If the plaintiff's act was due to "mere inadvertence or momentary inattention," the second part of the test is not satisfied; both appreciation of the danger and a deliberate voluntary act amounting to a "considered choice" must be proved by the defendant to present an assumption of the risk defense. (*Niffenegger v. Lakeland Construction Co.* (1981), 95 Ill. App. 3d 420, 425, 420 N.E.2d 262.) Where the defendant has proved only that the act which triggered the injury was done with full knowledge of the dangers involved, but without "conscious conduct resulting in the injury, not satisfied by mere inadvertence of momentary inattention," assumption of the risk is not available as a defense and should be stricken as a matter of law. *Niffenegger*, 95 Ill. App. 3d 420, 424-25.

■■■ In applying this standard to an analysis of plaintiff's conduct, we must distinguish between plaintiff's actions in repairing the machine while running and in bringing his hand in contact with the fan. Testimony at trial indicated that it was common practice to work on the machines while they were running and that this was a part of plaintiff's job. "In situations where the nature of plaintiff's employment requires exposure to certain hazards, it would be a *non sequitur* of the policy considerations of strict tort liability to say that plaintiff has voluntarily and unreasonably assumed such hazards by the mere acceptance of his employment." (*Scott v. Dreiss & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 990.) We conclude that McCracken's working on the machine while running does not constitute evidence of assumption of the risk. This leads us to McCracken's tapping of the fuel filters, and the subsequent contact of his hand with the rotating fan. The *Scott* court noted:

> "There must, we think, be an element of conscious conduct resulting in the injury which is not satisfied by mere inadvertence or momentary inattention. [Citation.] The testimony in the instant case stands uncontradicted that plaintiff's contact with the foot treadle was inadvertent. Defendant does not point out, nor does our search of the record reveal, any facts from which a contrary inference may reasonably be drawn. Therefore, assuming *arguendo* that plaintiff did have knowledge of one of the 'defects,' his conduct was not voluntary and unreasonable within the meaning of assumption of risk. Accordingly, we concur with the trial court's conclusion that the evidence as a whole so overwhelmingly favors plaintiff that a jury finding for defendant on that issue could never stand." (*Scott*, 26 Ill. App. 3d 971, 990-91.)

The *Scott* case governs our disposition of this issue. In *Scott*, the plaintiff was a punch press operator who inadvertently activated the ram on the press while his hand was on the targeted area. In the case at bar, McCracken was attempting to tap a fuel filter when his hand made

contact with the fan blade. There is nothing in the record which suggests that McCracken's action was due to anything but momentary inattention to the task at hand. "[B]efore the defense [of assumption of the risk] is properly submitted to the jury, there must be some evidence which will permit a finding that the one charged with assuming the risk had knowledge of the particular risk, and comprehending and appreciating such risk, voluntarily took his chances of harm therefrom." (*Scott*, 26 Ill. App. 3d 971, 990.) Neither McCracken's working on the machine while it was running, nor inadvertently thrusting his hand into the fan blade constitutes evidence of assumption of the risk. McCracken's conduct is, at most, evidence of contributory negligence which, as noted above, is no defense in this action. Because the issue of assumption of the risk was not supported by any evidence, it should not have been submitted to the jury. The erroneous presentation of the defense to the jury warranted the ordering of a new trial by the trial court. Consequently, the trial court did not abuse its discretion. (See *Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 199.) On retrial, the issue of assumption of the risk should not be submitted to the jury. *Collins v. Musgrave* (1975), 28 Ill. App. 3d 307, 314.

■■ Appellant contends that the jury verdict could have represented a finding for it on the unreasonably dangerous product issue. While this may be true, submitting the assumption of the risk issue to the jury where no evidence supporting that issue has been adduced during trial is reversible error. (*Collins*, 28 Ill. App. 3d 307.) Hence, this ground alone warranted the trial court's grant of a new trial.

■■ Appellant asserts that the evidence that the earth scraper was not unreasonably dangerous was so overwhelming that a verdict should have been directed for WABCO. We disagree. The standard for determining whether a defect giving rise to injury breaches a strict liability duty is whether the defect "subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] * * *, with the ordinary knowledge common to the community as to its characteristics.' (Emphasis added.) Restatement (Second) of Torts sec. 402A, Comment *i* (1965)." (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211-12, 384 N.E.2d 368.) There is no shield or guard on the back side of the fan, which faces the two filters, and the scraper contains no warnings about the dangers of working in proximity to the fan. McCracken testified that "[w]ith the shroud there, I thought it was protected," even though "I knew there was [no guard] on the back." Also, the misleading appearance of safety allegedly engendered by the partial shroud may have been exacerbated by the placement of a shield around the fans of subsequent models.

This is borne out by McCracken's testimony that the only similar equipment on the jobsite was a newer model, which, according to other trial testimony, would have had a complete shield. This evidence is sufficient to avoid directing a verdict against plaintiff on the unreasonably dangerous product issue.

For the foregoing reasons the order of the circuit court of St. Clair County granting a new trial in this cause is affirmed, and this cause is remanded for further proceedings consistent with this opinion.


Affirmed.


KASSERMAN, P. J., concurs.


JUSTICE WELCH, dissenting:

When, as here, it is undisputed that a products liability plaintiff knew of the dangers of the allegedly defective product, the trial court must consider three factors before it directs the issue of assumption of the risk in favor of the plaintiff: (1) the age, experience and knowledge of the user, (2) the obviousness of the defect and the danger it poses, and (3) the actions of the user which led to the injury. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.) Because, in its discussion of assumption of the risk, the majority ignores the first two factors and makes unwarranted conclusions about the third, I must respectfully dissent. I will discuss these three factors in order.

In many of those cases in Illinois where a court has struck the defense of assumption of the risk, it has often been shown that the plaintiff was generally inexperienced or was unfamiliar with the product in question. For example, in *Scott* and in *Coty v. United States Slicing Machine Co.* (1978), 58 Ill. App. 3d 237, 373 N.E.2d 1371, both plaintiffs were teenagers who had operated the machines which injured them for only several months before they were hurt.

The plaintiff in *Niffenegger v. Lakeland Construction Co.* (1981), 95 Ill. App. 3d 420, 420 N.E.2d 262, worked on a road crew. He was standing in front of a moving asphalt spreader, cleaning its jammed hopper, when an unguarded wheel rolled over his foot. In upholding the trial court's decision to strike the defense of assumption of the risk, the court stated:

> "At the time of the accident plaintiff had never seen anyone clean the machine before, had never cleaned the machine himself, had not seen the wheel on the side he was injured prior to the accident, nor had he received any instructions on how to clean the machine. His normal duties on the job site required him to stay behind or to

the side of the machine. There is evidence that plaintiff had been working behind and on the right side of the machine while a dump truck was in front of it, was thus unaware of the absence of a guard, and other employees also did not notice that the guard wasn't there." (95 Ill. App. 3d 420, 425, 420 N.E.2d 262, 267.)

The *Niffenegger* decision is based, in part, on the plaintiff's unawareness of the defect, a fact not present in this case. However, the above quotation nonetheless illustrates the importance of a plaintiff's knowledge and experience in the context of assumption of the risk.

In *Collins v. Musgrave* (1975), 28 Ill. App. 3d 307, 328 N.E.2d 649, the court held that, as a matter of law, a plaintiff who was "generally familiar with the automobile mechanics" did not assume the risks associated with a defective axle assembly unit. But, as that case turned upon the nonobviousness of the defect and the involuntary nature of the plaintiff's actions which led to the accident, I will discuss this case under those factors.

The plaintiff here was not a teenager, nor had he been on the job for only several months. It is true that he had had little formal instruction relating to his work, but he had been employed for 10 years as an oiler and for seven months as a greaser. During that time he learned to work on equipment like the WABCO scraper, so that even if this particular scraper had been at the Vandalia site for only a day or so before the incident, the plaintiff had much experience with similar construction machinery with similar engines. Moreover, unlike a mechanic who usually works on nonfunctioning machines, the plaintiff had been assigned to keep the equipment in the field running, which frequently required work near moving parts.

I believe that the plaintiff's substantial maintenance experience alone raises the issue of assumption of the risk to a jury question. (See *Thomas v. Kaiser Agricultural Chemicals* (1980), 81 Ill. 2d 206, 407 N.E.2d 32). Analysis of the remaining two factors, which follows, only acts to strengthen that belief.

The courts in *Coty* and *Scott* did not label the dangers of the respective machines "obvious" or "nonobvious," because both plaintiffs were inexperienced and the injuring acts were deemed "involuntary." The absent wheel guard in *Niffenegger* was not considered obvious, and rightly so, when the wheels were only eight or nine inches in diameter and far below where the plaintiff worked cleaning the hopper.

The plaintiff in *Collins v. Musgrave* was travelling in his half-ton truck at 55 miles per hour when he discovered that his accelerator did not work. Instead of slowing to a stop on the highway, he elected to turn into an automobile lot, where he discovered that neither the foot brakes nor the hand brakes worked. He finally stopped by colliding with a garage. The

plaintiff suggested at trial that when a sealed bearing in the axle assembly failed, the right rear wheel attached to the assembly moved out of position and impaired the braking system and transmission of power to the rear wheels. We cannot disagree with the court that "the nature of the danger did not become apparent until the accident actually occurred." 28 Ill. App. 3d 307, 312, 328 N.E.2d 649, 652.

In contrast to the somewhat concealed defects in *Niffenegger* and *Collins*, the dangers of the fan on the WABCO scraper were obvious to all. The fan was a full three feet in diameter and it was located at eye level, only four or five inches from the filters upon which the plaintiff worked. It seems to me that the noise and air flow from such a large whirling fan only inches away from the subject of the maintenance should have been given at least some discussion by the majority before it struck the assumption of risk issue.

The third factor to be analyzed, the act which caused the injury, was considered by the majority. It divides the plaintiff's conduct into two components—his working on the running machine and his "tapping of the fuel filters, and the subsequent contact of his hand with the rotating fan." I cannot quarrel with the statement that the plaintiff has not assumed any risks merely by virtue of his employment. But the characterization of the plaintiff's specific conduct which led to this injury as "involuntary" as a matter of law is both illogical and not in accord with precedent.

The majority notes that "[i]n the case at bar, McCracken was attempting to tap a filter when his hand made contact with the fan blade. There is nothing in the record which suggests that McCracken's *action* was due to anything but momentary inattention to the task at hand." (Emphasis added.) (103 Ill. App. 3d 26, 29-30.) If one looks only at McCracken's insertion of his hand into the path of the fan, then that conclusion would follow. But, if the "action" which produced the injury is to be construed as the last act prior to injury, as the majority implies, then it would be virtually impossible to invoke the defense of assumption of the risk, except in cases of self-inflicted injury.

A more logical reading of the "action" which produced the injury would include the plaintiff's conduct in reaching into the motor compartment with his bare hand to tap both filters. In fact, it is this conduct which the majority purports to analyze, although the language quoted above indicates that its focus was much more narrow. A broader definition of "action" is employed by the relevant cases, and, under this definition, there is an important factual question concerning whether the plaintiff acted "voluntary" to assume the dangers of the fan blade.

In *Scott*, mentioned by the majority, the plaintiff operated an electric punch press. When he stopped for a coffee break, he turned off the

electricity and proceeded to remove the material from the bed of the press. The ram came down on his right hand while he was in the midst of this process. The plaintiff surmised that he must have activated the foot pedal, and the court held that action involuntary.

On its facts, the *Scott* decision was doubtless correct. There were two separate actions involved—the plaintiff's voluntary insertion of his hand into the bed of the press and his involuntary contact with the foot pedal. But for the action of the plaintiff's foot, he would not have been injured. Since it was that action, and not the entirely separate action of the plaintiff in placing his hand into the bed of the press, which caused the injury, the *Scott* court correctly examined the depression of the foot pedal to determine whether it was voluntary.

The plaintiff in *Coty* operated a meat slicing machine with a stationary rotating blade and a moving meat tray. To prevent the splashing of juices from the meat being sliced, she covered the meat with paper towels. When she saw that the towels were being sliced along with the meat, she reached into the tray, without turning off the machine, to remove the paper towels. Her hand moved with the meat and was lacerated by the blade.

According to the majority's analysis, the court should have concluded that the plaintiff's placement of her hand in front of the blade was "involuntary" and therefore she did not assume the risk of injury as a matter of law. However, the *Coty* court inquired into the nature of "plaintiff's conduct in removing the paper towels without switching off the power." (58 Ill. App. 3d 237, 246, 373 N.E.2d 1371, 1378.) It concluded that, given the plaintiff's age and experience, and the nature of the defect, her split-second decision to remove the paper was involuntary as a matter of law.

Also instructive is *Collins v. Musgrave*. The court in that case did not narrow its scope of inquiry to the plaintiff's last action before he hit the wall of the garage. The plaintiff's "split-second decision to turn into [defendant's] lot rather than to stop on the highway upon discovering the loss of acceleration" (28 Ill. App. 3d 307, 313, 328 N.E.2d 649, 653) was deemed involuntary, in part due to the concealed nature of the defective axle. *Collins* represents a much more sensible reading of the term "action" than that employed by the majority.

The defense of assumption of the risk was held to be a jury question in *Martinet v. International Harvester Co.* (1977), 53 Ill. App. 3d 213, 368 N.E.2d 496. There, the plaintiff left a bulldozer in low reverse gear and dismounted it to fasten an attachment to it. As he remounted the machine, he slipped, and his right hand hit the clutch lever and engaged the transmission. The reverse motion of the machine's track pulled the plaintiff into it and injured his left leg.

Under the majority opinion, the plaintiff would not have assumed the risk of injury because there would be "nothing in the record which suggests that [the plaintiff's striking of the clutch lever] was due to anything but momentary inattention to the task at hand." But, again, the court's inquiry was not so narrow. It held that the plaintiff's decision to leave the transmission in gear presented a jury question on assumption of the risk.

In this case, the plaintiff was successful in tapping the first filter, but was injured in his attempt to tap the second filter. As a logical matter, and, according to the authority of cases such as *Coty* and *Martinet,* the "action" which led to the injury was the plaintiff's decision to reach into the engine compartment and tap the filters with his hand. It was not only the movement which brought his hand into the path of the blade instead of into contact with the second filter.

Unlike the majority, I believe that McCracken's action in reaching into the engine compartment to work on the filters was not due to "momentary inattention to the task at hand" as a matter of law. The plaintiff's substantial experience with working machinery and the obvious character of the dangers of the fan show that assumption of the risk was precisely the sort of question which was for the jury to decide.

If my discussion has seemed to focus on only a few cases, it is because those cases which have directed the issue of assumption of the risk in favor of either party are very exceptional, and I have not considered those cases which were decided solely on the plaintiff's unawareness of the defect, because this plaintiff admitted that he knew the fan was unshielded. (Compare *Sipari v. Villa Olivia Country Club* (1978), 63 Ill. App. 3d 985, 380 N.E.2d 819, and *L. D. Brinkman & Co.-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221.) I realize that both *Niffenegger* and *Collins* discuss the unawareness of the respective plaintiffs of the defects involved, but these cases were relevant authority for their discussion of the other pertinent factors.

Assumption of the risk in a products liability case is normally a question for the jury (*Thomas v. Kaiser Agricultural Chemicals*), and there are many significant differences between this case and those few cases which have directed that issue in favor of the plaintiff. Those differences are so great that I am compelled to dissent from the majority's departure from the general trend of products liability cases in this State. I would let the jury's verdict stand.