844 F.2d 789
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara A. PARR, executrix of the estate of James R. Parr,
Plaintiff-Appellant,
v.
CLARK EQUIPMENT COMPANY, INC; Clark Melroe Division;
Linsley Enterprises, Inc.,; Fork Truck Rental &
Supply Company; John Doe, # 1 Division;
John Doe # 2 Company, Inc.,
Defendants-Appellees.
 No. 86-4086.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Barbara Parr[1] appeals from the judgment of the district court for defendant Clark Equipment Co., Inc. (Clark) in this products liability action. Appellant argues that the court erred in excluding some of the testimony of her expert witness, in denying her motion for summary judgment and directed verdict on the issue of assumption of the risk and in sending the issue of misuse to the jury. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 This case arises from the death of James Parr. James Parr ran a farm with his father Donald Parr in Beallsville, Ohio. In February of 1980, Donald Parr purchased a Model 630 Bobcat loader[2] from Linsley Enterprises Inc. The loader was manufactured by Clark.
 
 
 3
 On January 31, 1981, James Parr's body was discovered pinned between the bucket and the front of the machine. His right arm was reaching into the cab of the machine. The machine's engine was running. There were no eyewitnesses to the accident.
 
 
 4
 Donald Parr testified that before the accident he and his son had repaired the steering linkage on the loader. He also testified that the bucket was down when this was done.
 
 
 5
 Barbara Parr's testimony concerned the position of the body when she discovered it. She also stated that she attempted to move the lift arms by pushing on the pedal but was unable to actuate the hydraulic system.
 
 
 6
 Terry Hickman, a member of the emergency squad, testified that he could not move the pedal to raise the lift arms, and that another piece of equipment had to be used to raise the arms and bucket off of James Parr. Hickman also testified that Donald Parr had told him they had been working on the loader and had the lift arms held by a chain to a joint for safety. Finally, he testified that he arrived at the scene after the accident and he observed the chain on the floor near the loader. He did not notice any debris under the pedals.
 
 
 7
 Donald Parr testified about the following events which occurred after the accident. He stated that he attempted to raise the lift arms by pushing on the pedal but it would not move. He then drove the loader to the milk barn where there was light and water available, and noticed debris under the pedal. He got a bucket of hot water and poured it over the pedals. After doing this he was able to use the pedal to operate the lift arms. Finally, he removed several handfuls of softened debris from under the pedal.
 
 
 8
 Several employees of Clark also testified at trial and field test reports done on the loader or its prototype were introduced into evidence. This testimony and evidence established that there were safety devices available for the loader which were required in Europe, and which will prevent inadvertent actuation of the pedals to protect operators from descending lift arms. The evidence also showed that Clark was aware of the inherent problem of debris collecting under the pedals, and that it knew that operators would have to clean out the pedal area as a part of routine maintenance. To facilitate clean out, holes were placed in the floor of the loader under the heel and the toe of the pedal.[3] Parr also introduced reports of similar accidents involving Clark loaders.
 
 
 9
 Clark presented the testimony of James Bauer, a designer of the Bobcat loader, who testified that the machine has an auxiliary hydraulic system which is used to provide power to attachments other than the lift arms. This system is actuated by the sideways movement of the right hand steering lever. When actuated it blocks the flow of oil to the pump and prevents the raising or lowering of the lift arms. The normal driving of the loader would probably take the loader out of this position.
 
 
 10
 Plaintiff presented Robert Hume, a mechanical engineer, as an expert witness. Hume gave the following testimony. The design of the loader did not comply with safety standards published by the Society of Automotive Engineers. The loader was defectively designed because it did not contain any one of a number of safety devices to restrain the lift arms in the elevated position. The loader design created a problem with the collection of debris around the foot pedals. The design allowed the lift arms to get stuck, causing the operator to exit the machine to take action to lower the bucket. It was foreseeable that an operator would clean out the foot pedal area. Cleaning out the area was not misuse. The warnings were inadequate. If the loader was equipped with various safety devices, Parr's death would have been prevented.
 
 
 11
 The Handbook for Bobcat Operators as well as the warning which was affixed to the inside of the cab of the loader were also introduced into evidence. The warning label stated: "Do not leave the Bobcat with engine running, lift arms up, or brake off.... Breaking any of these rules is dangerous." The Handbook also warned not to get off the loader when the lift arms are up.
 
 
 12
 Barbara Parr filed this suit against Clark and Linsley Enterprises asserting theories of strict liability and negligence.[4] She filed a partial motion for summary judgment, on the issue of assumption of the risk which was denied. A trial commenced on May 29, 1986. The theory of Parr's case was that the "loader was defective because of its lack of any safety devices that would enable a user to safely perform simple maintenance procedures which were required by the design of the machine." At trial, the court excluded the testimony of her expert witness as to how the accident occurred. Both Parr and Clark moved for directed verdicts at the close of the evidence. Both motions were denied, and the jury rendered a general verdict for the defendant on June 6, 1986 and the court entered a take nothing judgment. Parr's motion for a new trial was denied on November 16, 1986. Parr timely appeals from this judgment.
 
 
 13
 Parr argues that the court erred in excluding the testimony of her expert witness concerning the cause of the accident, and in failing to grant a directed verdict on the issues of assumption of the risk and misuse. Clark counters these arguments and also argues that this case can be easily disposed of by the "two issue rule."
 
 II.
 A.
 
 14
 Appellee contends that this court need not consider any of appellant's alleged errors because of the "two issue" rule.
 
 
 15
 In Ohio, where a jury returns a general verdict in a case involving more than one issue and where the verdict is not tested by interrogatories to determine on which issue the jury based its decision and one of the issues was submitted free from error, it is presumed that all issues were decided in favor of the prevailing party, and the error in presenting the other issues will be disregarded. Centrello v. Basky, 164 Ohio St. 41, 128 N.E.2d 80 (1955); Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851 (1946); Jones v. Kline, Ohio App. 73 Ohio Law Abst. 354, 137 N.E.2d 611 (1955).
 
 
 16
 Keet v. Service Machine Co., 472 F.2d 138, 140 (6th Cir.1972).
 
 
 17
 Appellant argues inter alia that the alleged error in excluding the expert testimony permeated every issue in the trial and therefore precluded use of the two-issue rule since no error was presented error free and that the rule does not apply to cure the error of charging an issue that is not in the case at all.
 
 
 18
 Appellant relies on Ricks v. Jackson, 108 Ohio App. 466, 474 (1958)), aff'd, 169 Ohio St. 254 (1959), in which the court refused to apply the two issue rule to cure the trial court's error in instructing on assumption of the risk when there was no evidence to support the defense.
 
 
 19
 In affirming the Ricks decision, the Ohio Supreme Court noted that, "this court has held that the two-issue rule does not apply where there is a charge on an issue upon which there should have been no charge. Gottesman, Admr. v. City of Cleveland, 142 Ohio St., 410, 52 N.E. (2d), 644." Ricks, 169 Ohio St. at 257.
 
 
 20
 Since the two issue rule does not apply when an issue should not have been sent to the jury, and since the basis of appellant's arguments is that the issues of misuse and assumption of the risk should not have been sent to the jury, we must consider the merits of appellant's substantive arguments.
 
 B.
 
 21
 Appellant claims that the court erred in excluding the opinion testimony of her expert concerning the cause of the accident. Appellant made the following offer of proof:
 
 
 22
 Now if asked, Mr. Hume would have testified that the accident occurred as a result of the build-up debris requiring Mr. Parr to get out of the unit and in that process there was an inadvertent actuation of the pedal and the bucket came down and crushed him. He further would have testified in response to a later question that was also sustained by the Court--objection sustained--that from the description of the accident by the various people and how they had to get the bucket off of him, that he could testify as to what the precise position was of the foot pedal, that is whether it was inclined up, down or in the neutral position.
 
 
 23
 In reviewing the exclusion of expert testimony, the Court has set forth a manifest error rule. "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action must be sustained unless manifestly erroneous," Salem v. United States Lines Co., 370 U.S. 31, 35 (1962). The test for the admissibility of expert evidence is set forth in Rule 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," then an expert may testify by opinion or otherwise. Fed.R.Evid. 702.
 
 
 24
 [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation....'
 
 
 25
 Salem, 377 U.S. at 35 (quoting United States Smelting Co. v. Parry, 166 F. 407, 411, 415 (1909)). This court noted in United States v. Green, 548 F.2d 1261 (6th Cir.1977), that "appellate review of such sensitive determinations by lower courts may only be rationally accomplished on an ad hoc basis." Id. at 1268.
 
 
 26
 On the ultimate question of helpfulness to the jury, appellant argues that since there was no eyewitness testimony concerning the cause of the accident, the expert's testimony should have been admitted to help the jury make that determination.
 
 
 27
 Appellee argues that the proffered testimony was not based on any scientific or expert analysis, but was merely one person's opinion on what inference to draw from other facts, which inference the jury was equally capable of drawing. The sum of the appellee's argument on this issue is contained in the following passage from its brief:
 
 
 28
 Hume was permitted to express an opinion as to the ultimate issue in this case, stating that the design of the Bobcat was defective and that if the Bobcat had been equipped with the proposed safety devices, Parr's death would have been prevented. Relative to the issue of assumption of risk, Hume was further permitted to testify that collection of dirt and debris was inherent in the design of the Bobcat; that debris could accumulate to the point where the lift arms could become stuck in the up position; and that if the lift arms became stuck in the raised position an operator would have no choice but to exit the machine to take corrective action. To have allowed Hume to then make the conclusory statement that the accident in this particular case happened in the foregoing manner would have added nothing to the evidence before the jury.
 
 
 29
 The jury had evidence relating to the following issues: that Clark was aware of a problem with debris accumulating in the pedal area and that there were safety devices available for this type of equipment which were not used on models sold in the United States. They also had the testimony of the expert concerning how the debris problem could affect the operation of the boom and his opinion that the loader was defective. The question before this court, therefore, is, given the evidence that the jury had, would the proffered testimony have been helpful to the jury so as to make its exclusion manifestly erroneous. Given the other evidence the jury had before it and the testimony of the expert that was admitted, we believe that the jury was equally capable of drawing the inference suggested by the proffered testimony, and therefore, the exclusion of this evidence was not manifest error.
 
 C.
 
 30
 Appellant argues next that the court erred in failing to grant summary judgment or a directed verdict on the issues of assumption of the risk and misuse.
 
 
 31
 When exercising diversity jurisdiction, a federal district court must apply the forum state's standard for directed verdict since the federal rule governing directed verdicts, Fed.R.Civ.P. 50(a), does not specify a standard for granting or denying such a motion. Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984). Appellate courts apply the same standard when reviewing a lower court's grant of a directed verdict motion. Hersch v. United States, 719 F.2d 873, 877 (6th Cir.1983).
 
 
 32
 In Ohio, the civil rule governing the standard for granting a directed verdict motion states in full:
 
 
 33
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 
 
 34
 Ohio R.Civ.P. 50(A)(4) (emphasis added). In determining whether reasonable minds can reach but one conclusion, the court cannot "consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion." Strother v. Hutchinson, 67 Ohio St.2d 282, 284, 423 N.E.2d 467 (1981) (Per Curiam).
 
 
 35
 Briney v. Sears, Roebuck & Co., 782 F.2d 585, 587 (6th Cir.1986).
 
 
 36
 In Ohio,[5] assumption of the risk requires three elements: one must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created. Sech v. Rogers, 6 Ohio St.3d 462, 466 (1983).
 
 
 37
 Appellant argues that the district court erred in allowing the issue of assumption of the risk to go to the jury, and in its instruction on assumption of the risk. She argues that there was no evidence that the decedent's action was voluntary or that the decedent had a full appreciation of the hazard that killed him.
 
 
 38
 The basis of appellant's first contention is that there was no evidence that the decedent intentionally and deliberately caused the lowering of the lift arms. The main case upon which appellant relies is of questional value. In Elder v. Crawley Book Machinery Company, 441 F.2d 771 (3d Cir.1971), the plaintiff's fingers were severed when she inadvertently placed her hand into an allegedly defectively designed machine. On the issue of assumption of the risk, the court held "that if the plaintiff's fingers became placed in a dangerous position in the machine by reason of inadvertence, momentary inattention or diversion of attention, that this would not amount to assumption of the risk." Id. at 774. In the instant case, Parr did not inadvertently place his body in a dangerous position as the evidence is clear that he got out of the loader with the engine running and the lift arms up and proceeded to do some action while underneath the lift arms. Appellant contests that the defense of assumption of the risk does not apply because there was no evidence that James Parr deliberately or intentionally caused the lift arms to be lowered onto him, and ignores the fact that James Parr voluntarily placed himself in a position where the bucket could crush him. Unlike in Elder, where the plaintiff inadvertently placed herself in a dangerous position and then intentionally actuated a machine which caused injury, this case presents a situation where the decedent intentionally and voluntarily placed themselves in a dangerous position and then apparently inadvertently activated the machine. Since the basis of the Elder court's decision was the inadvertent placing of the fingers in the machine its worth to the present analysis is minimal.
 
 
 39
 Appellant also relies on McCracken v. Westinghouse Air Brake Co., 430 N.E.2d 539 (1981) for the proposition that "where the defendant has proved only that the act which triggered the injury was done with full knowledge of the dangers involved but without 'conscious conduct resulting in the injury, not satisfied by mere inadvertence or momentary inattention,' assumption of the risk is not available as a matter of law." Id. at 542 (quoting Niffenegger v. Lakeland Constr. Co., 95 Ill.App.3d 420, 424-25 (1981)).
 
 
 40
 In McCracken, the plaintiff was injured when he stuck his hand into an unguarded fan on an earth scraper while attempting to tap the fuel filters which were mounted a few inches in front of the fan. The majority decided that McCracken's action of sticking his hand in the fan was due to momentary inattention and, therefore, the issue of assumption of the risk should not have been submitted to the jury. The dissenting judge in McCracken would have looked at the entire action of the plaintiff and would have decided that "the action which led to the injury was the plaintiff's decision to reach into the engine compartment and tap the filters with his hand. It was not only the movement which brought the hand into the path of the blade...." Id. at 546. The dissent criticized the majority's narrow focusing on the last act prior to the injury in the following passage:
 
 
 41
 The majority notes that '[i]n the case at bar, McCracken was attempting to tap a filter when his hand made contact with the fan blade. There is nothing in the record which suggests that McCracken's action was due to anything but momentary inattention to the task at hand.' If one looks only at McCracken's insertion of his hand into the path of the fan, then that conclusion would follow. But, if the 'action' which produced the injury is to be construed as the last act prior to injury, as the majority implies, then it would be virtually impossible to invoke the defense of assumption of the risk, except in cases of self-inflicted injury.
 
 
 42
 Id. at 545 (citation omitted) (emphasis in original).
 
 
 43
 The dissenting opinion's latter statement points out the major error in the appellant's argument. It seems that if appellant's view of assumption of the risk were adopted, it would only be available in the case of self-inflicted or voluntary injury. Since this is clearly not the case,[6] appellant's argument on the voluntariness issue must fail.[7]
 
 
 44
 Appellant also argues that there was no evidence that the decedent perceived and had a full appreciation of the risk. The appellee points to the following evidence which it claims demonstrated knowledge:
 
 
 45
 (1) The Bobcat loader had clear and conspicuous warnings regarding the danger of exiting the machine with the lift arms raised.
 
 
 46
 (2) James Parr had used the machine for eleven months and his father had never seen him exit the machine with the lift arms up.
 
 
 47
 (3) The danger of working under the lift arms was open and obvious.
 
 
 48
 (4) Donald Parr testified that he believed his son was aware it was dangerous to exit or work on the loader with the lift arms up.
 
 
 49
 (5) James Bauer testified that because of the actuation force necessary to move the pedal James Parr deliberately moved the pedal.
 
 
 50
 (6) While working on the loader earlier, Don and James Parr had secured the lift arms with a chain.
 
 
 51
 While the fourth and fifth piece of evidence are of questionable worth--the former because it only goes to what Donald Parr believed his son understood and the latter because it is unsupported by any other evidence that would indicate that James Parr intentionally actuated the lift arm--the other evidence, particularly the testimony concerning the use of the chain and the warnings contained on the loader appear to at least raise a question of fact concerning James Parr's knowledge of the risk, which would warrant sending the question to the jury and preclude the granting of a directed verdict.
 
 
 52
 Finally, appellant contests appellee's assertion that the risk was open and obvious, relying on Ford v. Harnischfeger Corp., 365 F.Supp. 602 (E.D.Pa.1973). In Ford the plaintiff was standing on the fork of a crane and was injured when the fork control was actuated and he was propelled into the window of the crane and caught between the forks. The defendant asserted assumption of the risk as a defense, and the court rejected it finding that, "In the case at bar, the danger of being propelled into the window of the cab and then caught between the forks and the cab by a sudden unexpected movement of the forks would not have been obvious to the plaintiff...." Id. at 607. Since the facts of Ford are not significantly similar to our case, its usefulness is limited.
 
 
 53
 Looking at the situation that apparently confronted James Parr--i.e. working underneath the lift arms--it appears that the risk of having the lift arms fall on him was open and obvious, or in the least, the evidence showed a situation which presented a question of fact for the jury concerning the obviousness of the risk.
 
 
 54
 Based on the evidence that was introduced below, we do not believe that reasonable minds could reach but one conclusion on this issue, and, therefore, the district court did not err in sending the issue of assumption of risk to the jury.
 
 D.
 
 55
 Appellant's final argument is that the court erred in sending the issue of misuse to the jury.[8] She bases her contention on the premise that the decedent's actions were foreseeable, citing Walter v. Trico Manufacturing Company, 487 F.2d 595 (7th Cir.1973), cert. denied, 415 U.S. 978 (1974) for the following proposition. "Misuse of a commercial article occurs when it is used for a purpose neither intended nor foreseeable by its manufacturer or distributor." Id.
 
 
 56
 Appellant points to the following evidence to demonstrate that Parr's use of the Bobcat was foreseeable. Carmen Lynnes, the vice president of engineering at Clark testified that the purpose of the safety devices on the European machines was to protect operators from descending lift arms. He also testified that "boom stops" were provided to shield engineers who were working on the pedals with the lift arms up. There was also evidence of the safety design changes Clark made on the loader after the accident. Finally, appellant cites to the reports of fourteen similar accidents involving descending lift arms.
 
 
 57
 The appellee argues that the evidence presented a question of fact and, therefore, the issue was properly presented to the jury. It points to the fact that Parr exited the loader with the lift arms up and the engine running in clear violation of the instructions and warnings on the loader. It also points to the strong circumstantial evidence that suggested that Parr was killed while attempting to manipulate the foot pedals with his hand while standing outside of the loader under the lift arms with the engine running, and notes that there was no evidence that this action was a foreseeable use.
 
 
 58
 While appellant's evidence may raise an inference that Parr's actions were foreseeable, we do not believe that when it is construed most strongly in favor of the appellee that reasonable minds could only have come to the conclusion that Parr's action was foreseeable. Parr's actions were in direct conflict with the explicit instructions and warnings on the machine which warned against leaving the loader with the engine running and lift arms up. Also, there was no direct evidence that Clark foresaw that operators would leave the loader and position themselves under the lift arms while cleaning out the pedal area.[10] Given the inferences that could be drawn from the evidence, we do not find error in the district court's submission of this issue to the jury.
 
 
 59
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Barbara Parr is the executrix of the estate of James Parr, her husband, who was killed while using a Bobcat Skid-steer loader manufactured by Clark Equipment Co
 
 
 [2]
 The Bobcat loader is a piece of farm machinery which has movable lift arms in front. The lift arms are operated by a hydraulic system which is actuated by the use of foot pedals. The arms are raised by pressing the heel of the pedal and are lowered by pressing the toe. The pedal is springloaded so that it will return to neutral and the arm will stop moving if no pressure is applied. Due to the nature of the hydraulic system, the engine must be running to raise the arms, but does not have to be running to lower them. There are many attachments available for the loader. A fork bucket attachment was on the machine at the time of the accident
 
 
 [3]
 The Parr's loader, an early model, had no clean-out hole under the toe
 
 
 [4]
 Prior to trial, Linsley Enterprises was dismissed and appellant amended her complaint to drop the negligence charge
 
 
 [5]
 As this is a diversity case, the substantive law of the forum state will apply. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)
 
 
 [6]
 See, e.g., Briney, 782 F.2d 585. In Briney, this court found assumption of the risk as a matter of law, when the plaintiff had removed a blade guard on a table saw and operated the saw without the blade, but inadvertently cut his fingers. Id. at 590-91
 
 
 [7]
 Appellant also challenges the court's instructions on assumption of the risk which stated that "an individual can assume the risk of an accident or inadvertent act by placing him in a position which he knows will substantially increase the chances of an accident occurring." This allegation is premised on appellant's main argument which appears to be that every action leading to injury must be voluntary and intentional in order to sustain an assumption of the risk defense. Since this proposition is of questionable merit and given the comprehensiveness of the entire assumption of the risk charge, this challenge to the jury instruction is not persuasive
 
 
 [8]
 There is no contention concerning the wording of the instruction or the availability of the defense of misuse in a products liability suit
 
 
 [10]
 Lynnes testified that Clark did not foresee that operators would leave the loader with the bucket in the air