**Ellen DIEDRICH, Plaintiff,**

v.

**George W. WRIGHT and Randall Gaddini, d/b/a Belvidere Parachute Center; and Paul Kevin Thompson, Defendants.**

**No. 78 C 724.**

United States District Court,
N.D. Illinois, E.D.

July 7, 1982.

---

Philip H. Corboy & Associates, Robert J. Glenn, Chicago, Ill., for plaintiff.

Heineke & Schrader, William H. Schrader, Michael West, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Ellen Diedrich brought this action against defendants George W. Wright and Randall Gaddini, d/b/a Belvidere Parachute Center, and Paul Kevin Thompson,[1] an employee of the Center, seeking compensation for injuries she sustained when making a parachute jump in June 1976. In her complaint plaintiff alleged that defendants failed to provide an adequate course of ground instruction, carelessly and negligently provided unsafe equipment for her jump, and violated numerous rules and procedures promulgated by the Federal Aviation Administration governing the conduct of parachute jumping schools.

In their answers to the complaint all defendants raised, *inter alia,* two defenses:[2] (1) plaintiff assumed the risk of injury and (2) a release form executed by plaintiff exonerates defendants from any liability. Plaintiff has moved for partial summary judgment, requesting the court to declare, as a matter of law, that neither defense is valid. *See* 10 Wright & Miller, *Federal Practice & Procedure,* § 2737 (1973). For the reasons discussed below, the motion is granted and the affirmative defenses are stricken.

## I.

## INTRODUCTION

Most of the facts underlying this action are not in dispute. On June 6, 1976 Ellen Diedrich first visited the Belvidere Parachute Center to watch a friend make a parachute jump. Since there was room on the plane plaintiff was permitted to view the jump from the air. First, however, she was required to sign a release form exonerating the parachute center from liability for any injuries. In her deposition testimony plaintiff stated that she believed that the release was solely for the limited purpose of permitting her to go up in the airplane:

"A. ___ they gave me this thing. They had me sign something so that I could go up in the plane.

Q. So your understanding was this was solely for the purposes of going up in the plane? (sic)

A. Right."

(Dep. of E. Diedrich, p. 35).

The release form, headlined "Release, Waiver and Assumption of Risk," and captioned *"Read This Carefully Before Signing,"* provided as follows:

"I ... agree that my participating in sport parachuting activities ... shall be at my own risk. I realize and acknowledge that sport parachuting contains certain unforeseen and unforeseeable risks and hazards over which Belvidere Parachute Center has no control and I voluntarily assume such hazards and risks.

"Belvidere Parachute Center shall not be liable to me on account of any personal injury sustained by me in, on, or about the premises, aircraft or skies above or adjacent to Belvidere Parachute Center.

"... I agree on behalf of myself, my heirs, survivors or assignées, to fully and forever release, discharge, indemnify and hold harmless George Wright, Randall Gaddini, d/b/a Belvidere Parachute Center, its agents, servants and employees from any and all claims, demands, damages, rights of action or causes of action, present or future, whether the same be

1. The original complaint also joined as defendants various manufacturers of parachutes. These manufacturers were dismissed on April 1, 1982.

2. A third defense, that plaintiff's contributory negligence vitiates any claims she may have, is no longer viable in light of the Illinois Supreme Court decision in *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981), where the court adopted the "pure comparative negligence" doctrine. Defendants apparently concede that a contributory negligence defense is no longer operative.

known, anticipated or unanticipated, resulting from or arising out of my use or intended use of the premises, facilities, services or equipment of Belvidere Parachute Center."

(Exhibit A, attached to defendants' memorandum in support of motion for partial summary judgment.) Ms. Diedrich signed the form, paid the five dollars fare to ride in the aircraft, and observed her friend's jump.

Six days later, on June 12, 1976, plaintiff returned to the center to take ground instruction on making a jump. She paid $60 for the course and was again given a release form identical to the one she had signed on June 6. This time, however, for undisclosed reasons, Ms. Diedrich did not sign the form. Nonetheless, she was allowed to take a lesson from Instructor Paul K. Thompson, an employee of the Belvidere Parachute Center. The students were not allowed to jump on June 12 due to wind conditions, and thus plaintiff returned to the Center on June 19 for her first jump. She received some more instruction and was given a parachute, packed by defendant Wright under the supervision of defendant Gaddini. After the plane carrying the students reached an altitude of approximately 2800 feet, Diedrich jumped. Tragically, the parachute lines were crossed or "lined-over" and the chute failed to fully open. As a result Diedrich fell to the ground, received severe and permanent injuries and is now a paraplegic.

## II.

### THE AFFIRMATIVE DEFENSES

#### A. *Assumption of Risk*

▇ Defendants maintain that because plaintiff was fully aware of the hazards inherent in skydiving, she assumed the risk of any injury and therefore is precluded from holding others liable for her misfortunes. We emphatically disagree.

Although assumption of risk is a defense in a products liability action, *Russo v. The Range, Inc.*, 76 Ill.App.3d 236, 238, 32 Ill.

Dec. 63, 395 N.E.2d 10 (1st Dist.1979), the defense is a fairly limited one.

"Whether a plaintiff has assumed the risk of an activity involves a two-step inquiry, with the burden of proof on the defendant. First, the defendant must show that the plaintiff actually knew of the defective condition, with such knowledge determined on the basis of a subjective, rather than an objective test. Second, the defendant must show that, despite awareness of the danger, the plaintiff deliberately and unreasonably exposed himself to the danger ... both appreciation of the danger and a deliberate voluntary act amounting to a "considered choice" must be proved by the defendant to present an assumption of the risk defense."

*McCracken v. Westinghouse Air Brake Company, Inc.*, 103 Ill.App.3d 26, 58 Ill.Dec. 507, 510, 430 N.E.2d 539, 542 (5th Dist.1981). *See also Niffenegger v. Lakeland Construction Co.*, 95 Ill.App.3d 420, 425, 50 Ill.Dec. 945, 420 N.E.2d 262 (2d Dist.1981).

Judged by these standards defendants' arguments fall far short of establishing that plaintiff assumed the risk of her accident. The relevant inquiry is not whether plaintiff recognized the hazards of skydiving, rather, the question is whether she knew that the parachute was defective or that the instruction was inadequate. There is no dispute that plaintiff did not know, and indeed had no way of knowing either of these matters, and thus "assumption of the risk is not available as a defense and should be stricken as a matter of law." *McCracken v. Westinghouse Air Brake Co., supra,* 58 Ill.Dec. at 510, 430 N.E.2d at 542.

#### B. *The Release Form*

The argument that plaintiff waived her right to hold defendants liable by execution of a release form presents a far more difficult issue than the assumption-of-risk defense. In resolving this question we assume, without deciding, that the contract signed on June 6 applied to all activities plaintiff undertook after that date at Belvi-

dere Parachute Center.[3] Nevertheless, we find that the exculpatory clause, as a matter of law, does not preclude an action based on negligence or strict liability.

■ Illinois courts have long recognized the validity of exculpatory clauses that relieve a party from liability, unless "(1) it would be against the settled public policy of the state to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." *Jackson v. First National Bank,* 415 Ill. 453, 460, 114 N.E.2d 721, 725 (1953). *See also Evra Corp. v. Swiss Bank Corp.,* 522 F.Supp. 820, 832 (N.D.Ill.1981). Such a clause, however, must be strictly construed against the party seeking immunity from liability, and the intentions of the parties should be delineated "with the greatest of particularity." *Berwind Corporation v. Litton Industries,* 532 F.2d 1, 4 (7th Cir.1976).

■ Construing the release at issue here in light of these principles, we find that the clause does not bar plaintiff from suing for injuries allegedly incurred by defendant's negligence. While the contract need not specifically contain the word "negligence," the unmistakable intent of the parties to preclude liability in such circumstances must be evident. *See Kurek v. Port Chester Housing Authority,* 18 N.Y.2d 450, 456, 276 N.Y.S.2d 612, 615, 223 N.E.2d 25, 27 (1966). Although the release intimates in general terms that defendants are to be held harmless from any and all claims, this phrase is qualified by the more specific terminology which precedes it. *See Bahamas Agricultural Industries Limited v. Riley Stoker Corp.,* 526 F.2d 1174, 1179 (6th Cir. 1975). *See also Berwind Corp. v. Litton Industries, Inc., supra,* at 6–7.

The only explicit reference to fault comes in the first paragraph of the contract, and it provides that Ms. Diedrich assumed those "certain unforeseen and unforeseeable risks and hazards over which Belvidere Parachute Center has no control." Reading the general contract terms in light of this spe-

cific unambiguous language, and keeping in mind both the disfavor with which the law views contracts intending to exculpate a party from the consequences of his own negligence and the activities contemplated when the release is signed, the only reasonable interpretation of the release is that it exempts defendants from injuries that ordinarily occur, without any fault of the defendant, in such a hazardous sport. In reaching this conclusion we are guided by the findings of the New York Court of Appeals when faced with a virtually identical fact situation. After considering a release form that purported to waive any claims against the parachute center, the court wrote:

> Assuming that this language alerted the plaintiff to the dangers inherent in parachute jumping and that he entered into the sport with apprehension of the risks, it does not follow that he was aware of, much less intended to accept, any *enhanced* exposure to injury occasioned by the carelessness of the very persons on which he depended for his safety. Specifically, the release nowhere expresses any intention to exempt the defendant from liability for injury or property damages which may result from his failure to use due care either in his training methods or in his furnishing safe equipment. Thus ... the agreement could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant, to those who participate in such a physically demanding sport.

> In short, instead of specifying to prospective students that they would have to abide any consequences attributable to the instructor's own carelessness, the defendant seems to have preferred the use of opaque terminology rather than suffer the possibility of lower enrollment. But, while, with exceptions not pertinent to

3. Although the issue is not clear, whether the original release form executed on June 6 is limited to Ms. Diedrich's plane ride or, alterna-

tively, governs her sky jumping, is probably a factual question that turns on the intentions of the parties.

this case, the law grudgingly accepts the proposition that men may contract away their liability for negligently caused injuries, they may do so only on the condition that their intention be expressed clearly and in "unequivocal terms"....

*Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 369–70, 400 N.E.2d 306, 310–11 (Ct. App.1979) (citations omitted).

 Because we find that the release does not bar plaintiff's negligence claim, we need not consider plaintiff's other arguments for rejecting the affirmative defense. We agree, moreover—and defendants apparently do not dispute—that an exculpatory clause cannot bar an action based on strict liability. *See Sipari v. Villa Olivia Country Club,* 63 Ill.App.3d 985, 20 Ill.Dec. 610, 380 N.E.2d 819 (1978). Accordingly, plaintiff's motion for partial summary judgment is granted and the affirmative defenses of assumption of risk and the release form are hereby stricken.